David MUNROE et al.

v.

TOWN OF EAST GREENWICH et al.

No. 98–573–M.P.

Supreme Court of Rhode Island.

June 15, 1999.

Elizabeth McDonough Noonan, Providence, for Plaintiffs.

Joseph V. Cavanagh, Jr., Edmund L. Alves, Jr., Kristen Rodgers, Providence, Andrew M. Teitz; Nancy Giorgi, Johnston, Peter J. Rotelli; Gary Berkowitz, Swansea, MA, for Defendants.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on the petition for a writ of certiorari brought by the Town of East Greenwich (the town). This litigation arises from a judgment entered in the Superior Court reversing the East Greenwich town council's final approval of a subdivision acting as the Platting and Subdivision Board. The central issue in this case is whether the Superior Court erred in concluding that the Rhode Island Development and Subdivision Review Enabling Act of 1992, G.L.1956 §§ 45–23–25 through 45–23–74 (the Development Review Act), that requires all town councils to empower planning boards to control land development and subdivision projects, supersedes the town's Home Rule Charter (the charter). The charter, as further implemented by ordinance, requires the planning board to act as a technical review committee responsible for reviewing all applications for platting and subdivision of land within the town and submitting its recommendations to the town council. For the reasons explained below, we deny the petition for certiorari and affirm the judgment of the Superior Court.

The respondents, David and Donna Munroe (the Munroes), are abutting owners to a 35.5 acre parcel of vacant land in East Greenwich identified as assessor's plat 15H, lot Nos. 48 and 121 (the subject property). Philip Ryan Homes, Ltd. (Ryan) sought to subdivide the subject property into a ten-lot cluster compound known as the "Long Meadow Farms." In February 1996, Ryan, in compliance with

the procedural requirements for subdivision approval, submitted his plans to the town council, acting as the Platting and Subdivision Board of the Town of East Greenwich. On or about February 17, 1998, the town council conditionally approved Ryan's final plans. The Munroes appealed the town council's decision to the town's zoning board of review (acting as a board of appeal). By a unanimous vote, the Munroes' appeal was denied.

Thereafter, the Munroes sought review of the board of appeal's decision by filing a complaint in the Kent County Superior Court. In their first amended complaint of July 16, 1998, they sought review and reversal of the board of appeal's decision, contending that its decision was made in violation of constitutional, statutory, ordinance or planning board regulation provisions, in excess of the authority granted to the planning board by statute and ordinance, and was made upon unlawful procedures. The trial justice agreed, holding that the board of appeal's decision upholding the town council's approval violated the procedural requirements of the Development Review Act and prejudiced the Munroes' substantial rights. Judgment was entered in favor of the Munroes.

On December 7, 1998, the town and the town council filed a petition for writ of certiorari to review the judgment of the Superior Court. This Court issued the writ on February 18, 1999, and assigned this matter to the regular calendar for full briefing and argument. On March 18, 1999, upon petitioners motion we ordered that the hearing on this petition be expedited.

### Petitioners' claims

First, the petitioners contend that the Superior Court was clearly wrong and misapplied the law of statutory construction in relying on the Development Review Act and in disregarding the charter's specific provisions pertaining to land development and planning. Second, they contend that the Superior Court misapplied the law and

improperly attacked the validity of the town council's authority as established by the charter. Third, they argue that the decision violates article 13, section 1, the Home Rule Charter Amendment, to the Rhode Island Constitution in that its conclusion would necessarily result in the immediate, permanent alteration of the town's form of government. We shall address each issue in order.

### Standard of Review

■ Pursuant to § 45–23–71 judicial review of board decisions is not *de novo*. *Kirby v. Planning Board of Review of Middletown*, 634 A.2d 285, 290 (R.I.1993). The statute authorizes the Superior Court to review such decisions utilizing the traditional judicial review standard that is applied in administrative-agency actions. *Id.* Therefore, the Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact. *Id.*; *Lett v. Caromile*, 510 A.2d 958, 960 (R.I.1986). Rather, "[i]ts review is confined to a search of the record to ascertain whether the board's decision rests upon 'competent evidence' or is affected by an error of law". *Kirby*, 634 A.2d at 290.

■ "When this [C]ourt reviews such an appellate decision of the Superior Court, the scope of our review is confined to determining whether the trial justice exceeded his or her authority under § 45–23–[71]." *Id.*; *see Sawyer v. Cozzolino*, 595 A.2d 242, 245 (R.I.1991). We shall reverse a lower court judgment on appeal from a planning board of review if the trial justice "misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." *Kirby*, 634 A.2d at 290 (quoting *Brum v. Conley*, 572 A.2d 1332, 1335 (R.I.1990)); *see Taylor v. Marshall*, 119 R.I. 171, 178, 376 A.2d 712, 716 (1977). After reviewing the trial justice's decision and the record of the proceedings before the board of appeals, we are of the opinion that the trial justice committed no error.

## Discussion

In rejecting the town council's authority to approve the subdivision proposed by Ryan, the trial justice relied in part upon the Rhode Island Zoning Enabling Act of 1991. G.L.1956 § 45–24–47(A) and (B).[1] He concluded that the town "usurped the decision-making authority that the Development Review Act [specifically, G.L.1956 § 45–23–51] provided was to be bestowed upon [a town's] planning board in favor of its town council acting as platting board[;] rather than requiring that land development projects be referred for approval to its planning board, the town requires that land development projects be referred for approval to its town council acting as platting board." This effectively reduced the planning board to the status of a technical review committee. We agree.

The town's charter provides that "[t]he Town council shall act as the Platting and Subdivision Board," East Greenwich, R.I., Home Rule Charter, art. III § 3170(S) (1972); see also East Greenwich, R.I., Code of Ordinances ch. 2, § 2–26(a) (1993) ("[t]he members of the town council shall constitute the platting and subdivision board"). Further, the platting board is designated as the permitting authority vested with decision-making power and control over subdivisions. Id. at § 2–26(b). ("the power and authority is hereby granted to the platting and subdivision board of the town * * * to control the subdivision of such land" within the town);

see also East Greenwich, R.I., Code of Ordinances appendix B, § 7(33) (defining permitting authority as the "entity of the Town of East Greenwich charged with the responsibility of application of these regulations relative to proposals for development or subdivision of property. (Also known as the platting and subdivision board)"); id. at § 29 ("[t]he East Greenwich Town Council has authorized by Ordinance * * * the permitting authority [town council acting as platting board] * * * to govern land development and subdivision projects * * *."); but see G.L. 1956 § 45–23–32(29) (defining permitting authority as "[t]he local agency of government specifically empowered by state enabling law and local ordinance to hear and decide on specific matters pertaining to local land use"). (Emphasis added.)

Pursuant to § 45–23–51 of the Development Review Act, control of land development and subdivision projects is required to be conferred upon the planning board. Section 45–23–51 provides:

"**Local regulations Authority to create and administer regulations.** The city or town council shall empower, by ordinance, the planning board to adopt, modify and amend regulations and rules governing land development and subdivision projects within that municipality and to control land development and subdivision projects pursuant to those regulations and rules."

1. General Laws 1956 § 45–24–47(A) and (B) provides in pertinent part:

"**Special provisions Land development projects.** (A) A zoning ordinance may provide for land development projects which are projects in which one or more lots, tracts, or parcels of land are to be developed or redeveloped as a coordinated site for a complex of uses, units, or structures, including, but not limited to, planned development and/or cluster development for residential, commercial, institutional, industrial, recreational, open space, and/or mixed uses as may be provided for in the zoning ordinance.

(B) A zoning ordinance adopted pursuant to this chapter which permits or requires

the creation of land development projects in one or more zoning districts *shall require that any land development project be referred to the city or town planning board or commission for approval, in accordance with the procedures established by chapter 23 of this title,* including those for appeal and judicial review, and with any ordinances or regulations adopted pursuant thereto, whether or not the land development project constitutes a 'subdivision', as defined in chapter 23 of this title. No land development project shall be initiated until a plan of the project has been submitted to the planning board or commission, and approval has been granted by the planning board or commission." (Emphasis added.)

*See also* § 45–23–63(D) ("[a] decision by the planning board to approve any land development or subdivision application shall require a vote for approval by a majority of the current planning board membership"). The petitioners argue that the Development Review Act cannot supersede any inconsistent provisions of the charter because the charter became a special act of the Legislature when its terms were ratified by the General Assembly in 1973. Moreover, pursuant to G.L.1956 § 45–22–1 [2] the town has the right to permit the town council to continue to exercise power over land development. We agree that the statute permits the town to operate under its home rule charter with respect to establishing a planning board or commission subject to the duties described in § 45–22–7. We note, however, that the Legislature may pursuant to § 45–22–7(d) require a "planning board or commission * * * [to] perform such other duties as may be assigned * * * from time to time by any act of the general assembly * * *." The Development Review Act is such an act and supersedes inconsistent ordinances adopted pursuant to the charter provision. *See, e.g.,* East Greenwich, R.I., Code of Ordinances ch. 2. § 2–26(b) ("the power and authority is hereby granted to the platting and subdivision board of the town * * * to control the subdivision of such land * * *" within the town); *id.* at § 2–26(a) ("[t]he members of the town council shall constitute the platting and subdivision board").

In this Court's recent decision, *Providence Lodge No. 3, Fraternal Order of Police v. City of Providence,* 730 A.2d 17 (R.I.1999), respondents challenged the city's contention that a city ordinance adopted pursuant to its Home Rule Charter has the same limiting effect on an interest arbitration panel which we held the state statute (G.L.1956 § 45–21–52) to have in the case of *Town of Barrington v. International Brotherhood of Police Officers Local No. 351,* 621 A.2d 716, 718 (R.I.1993). Relying on *City of Cranston v. Hall,* 116 R.I. 183, 185–86, 354 A.2d 415, 417 (1976), we held that ordinances adopted pursuant to a charter provision do not have the same limiting effect as state statutes of general application. *Providence Police Lodge No. 3,* 730 A.2d at 19.

In *Hall,* the city contended that its charter including a provision regulating promotion procedures had the force and effect of a legislative enactment and that an arbitration board exceeded its jurisdiction by decreeing that a new collective bargaining agreement between the parties include a provision that would be contrary to the charter. The conflict was between the charter which prescribed a particular promotion method and the Fire Fighters' Act, which made promotion procedures a bargainable issue. In resolving the conflict, we looked to the home rule amendment which "grant[ed] to the people of [the] several cities and towns the right of self-government in all local matters and endow[ed] each of our municipalities with the power 'to adopt a charter, amend its charter, enact and amend local laws relating to its property, affairs and government * * *' not inconsistent with the State Constitution and the laws enacted by the General Assembly * * *." *Hall,* 116 R.I. at 186, 354 A.2d at 417. We concluded that "[n]otwithstanding their broad sweep, nothing in those grants has an inhibiting effect on the General Assembly's overriding power to legislate even on local matters as long as it does so in a general act applicable to all cities and towns alike

**2.** General Laws 1956 § 45–22–1 provides:

"**Establishment of a planning board or commission Home rule charter exempt.** All cities and towns shall, by ordinance, establish a planning board or commission under the provisions of this chapter. Any city or town operating under a home rule charter which provides for the establish-ment of a planning board or commission may continue under the provisions of that charter, except that the provisions of § 45–22–7, governing the formulation and adoption of a comprehensive plan and the duties of a planning board or commission, shall apply to all cities and towns."

and does not affect the form of government of any city or town." *Id.*; *see also Town of Lincoln v. Lincoln Lodge No. 22,* 660 A.2d 710, 719 (R.I.1995); *Marro v. General Treasurer of Cranston,* 108 R.I. 192, 195, 273 A.2d 660, 662 (1971); *Opinion to the House of Representatives,* 79 R.I. 277, 281, 87 A.2d 693, 696 (1952). Further, the fact that "collective bargaining agreements may vary from one municipality to another does not make the legislation [Fire Fighters' Act] special rather than general in nature. * * *[T]he enabling legislation applies equally to all cities and towns and is, therefore, an act of general application that supersedes a controverting home rule charter provision." *Hall,* 116 R.I. at 186, 354 A.2d at 417.

Applying those standards to the Development Review Act, we conclude that it requires the city or town councils throughout the state to "empower, by ordinance, *the planning board* to * * * control land development and subdivision projects * * *." Section 45–23–51. (Emphasis added.) Consequently, the Development Review Act is an act of general application that would supersede an inconsistent home rule charter provision directing a town council to act as a planning board or commission. We believe, to hold otherwise, would as the trial justice explained, reduce the planning board to a "technical review committee," a function or status that the Legislature did not intend as evidenced by § 45–23–56. Section 45–23–56 provides in pertinent part:

> **"Administration Technical review committee.** (A) The planning board may establish a technical review committee of not fewer than three (3) members, to conduct technical reviews of applications subject to their jurisdiction.
>
> * * *
>
> (C) Reports of the technical review committee to the planning board shall be in writing and shall be kept as part of the permanent documentation on the development application. In no case shall the recommendations of the technical

review committee be binding on the planning board in its activities or decisions."

The trial justice correctly pointed out that the town's requirement that the technical review committee "shall normally consist of the membership of the planning board" contravenes the Development Review Act, which provides that a planning board may establish a technical review committee but not itself be constituted as a technical review committee. Section 45–23–56; *see also* § 45–23–32(52); East Greenwich, R.I., Code of Ordinances appendix B, § 7(54).

Petitioners next contend that the Superior Court misapplied the law and improperly attacked the validity of the town council's authority as established by the charter. The town argued before the trial justice that when the terms of the town's charter were ratified by the General Assembly in 1973, it became an act of the Legislature. *See Mellor v. Clancy,* 520 A.2d 1278, 1280 (R.I.1987). As such, the General Assembly specifically mandated that the town council act as the platting board and the general provisions of the Development Review Act could not supersede that specific mandate. The trial justice found the town's argument superficially appealing, but upon closer scrutiny rejected it, stating:

> "First, the act validating the town's charter specifically limits such validation to those 'respects in which the home rule charter * * * require ratification, confirmation, validation or enactment by the general assembly, *but in no other respects,'* P.L.1973, ch. 157, § 2, at 639 (emphasis added); *see also id.* ('[i]t is the express intention of the general assembly by the passage of this act, to give effect to, ratify, confirm, validate and enact *those certain provisions of the home rule charter * * * which require ratification.'*) (emphasis added). Not only does the town fail to argue that the designation of its town council as platting board was something requiring vali-

dation, since the law at the time of the General Assembly's validation of certain provisions of the towns charter specifically allowed town councils to act as planning boards, G.L.1956 § 45–23–19 (repealed by P.L.1992, ch. 385, § 1, eff. December 31, 1995), it is difficult to see what or why the General Assembly would need to validate in that regard. *Cf. McCarthy v. Johnson,* 574 A.2d 1229, 1231 (R.I.1990) ('[m]atters where the state maintains sovereignty include the regulation of police officers, the conduct of business, licensing, education, and elections'). The cases cited by the town on this point are distinguishable because they involved a provision in a home rule charter which required validation, *Mellor v. Clancy,* 520 A.2d 1278, 1280 (R.I. 1987) (involving provisions of the Town of East Greenwich's home rule charter pertaining to public schools; stating that 'such designation [of the department of public schools as an administrative department of the town] constitutes an act of the Legislature'); a provision in a home rule charter that the General Assembly had expressly validated, *Local No. 799 v. Napolitano,* 516 A.2d 1347, 1348 (R.I.1986), or that was held to have been validated, *H.V. Collins Co. v. Tarro,* 696 A.2d 298, 304 & n. 2 (R.I.1997) (provisions of the Barrington Town Charter pertaining to public schools were found to have been validated); and a home rule charter that had been validated in its entirety, *Coventry School Committee v. Richtarik,* 122 R.I. 707, 411 A.2d 912, 914–15 (1980). Here, to the contrary, the town's designation did not require validation and was neither specifically or generally validated. Therefore, the General Assembly's validation of certain other provisions of the town's charter does not imprint the towns designation of its town council as platting board with the specific mandate of the General Assembly.

"Furthermore, even if the General Assembly's validation of the town's charter extended to the town's designation of its town council as platting board, and even indulging the town's assertion that its charter would thus be a special act of the General Assembly, the town fares no better because the Development Review Act specifically repealed 'all special subdivision enabling acts in effect' on July 21, 1992 as of December 31, 1995, G.L. 1956 § 45–23–28(C); *see also* G.L.1956 § 45–23–26 ('[e]very municipality in the state * * * shall adopt land development and subdivision [review] regulations * * * which comply with all the provisions of this act [and] shall establish the standard review procedures for local land development and subdivision review and approval as specified in this chapter [—] procedures [that] are intended to provide thorough, orderly, and expeditious processing of development project applications') * * *."

██ We agree with the trial justice. The town's charter provision authorizing the town council to control land development and subdivision projects cannot supersede the Development Review Act, for the aforementioned reasons and because such grant of authority would be inconsistent with §§ 45–23–26, –28, & –29.

Section 45–23–28(A) provides that "[a]ny land development and subdivision review ordinance, regulation or rule, or amendment * * * enacted after December 31, 1994 shall conform to the provisions of this chapter [and][a]ll lawfully adopted land development and subdivision review ordinances, regulations, and rules shall be brought into conformance with this chapter by December 31, 1995." Clearly, this mandate would apply to the town's inconsistent charter provision, subdivision review ordinances, regulations and rules governing land development, since, as the trial justice found:

"the town's charter merely provides that the town council shall act as the platting board; it does not enumerate the powers that board is to exercise. Such enumeration is provided in the Town's code

of ordinances and subdivision review regulations. Thus, even had the General Assembly validated the entirety of the town's charter (and concomitantly the town's designation of the town council as platting board), such validation would not extend to the platting board's ordinance-supplied control over subdivisions."

The town adopted its subdivision review regulations on March 14, 1996. The trial justice stated that it was subject to the Development Review Act's requirements for that reason as well. Indeed, the town has no basis in law to argue that the Legislature intended to exempt inconsistent subdivision review regulations adopted after December 31, 1995, from the Development Review Act. Section 45–23–29(C)(3) & (5) demonstrates that the General Assembly clearly intended that local regulations governing comprehensive planning of land use shall be consistent:

"(C) Therefore, it is the intent of the general assembly:

* * *

(3)That certain local procedures for review and approval of land development and subdivision shall be the same in every city and town;

* * *

(5)That all proposed land developments and subdivisions will be reviewed by local officials, following a standard process, prior to recording in local land evidence records."

Lastly, petitioners argue that the trial justice's decision violates the Home Rule Charter Amendment of the Rhode Island Constitution in that its conclusion would necessarily result in the immediate, permanent alteration of the town's form of government. We disagree.

■■■ The Home Rule Charter Amendment to the Rhode Island Constitution confers power unto the cities and towns of the state to exercise their right of self-government in all local matters. R.I. Const. art. 13, sec. 1. The General Assembly, however, retains the right to legislate on matters of statewide concern, *Town of East Greenwich v. O'Neil*, 617 A.2d 104, 111 (R.I.1992) ("[m]unicipalities may not, however, legislate on matters of statewide concern") (quoting *Westerly Residents for Thoughtful Development, Inc. v. Brancato*, 565 A.2d 1262, 1264 (R.I.1989)), as well as the power to act in relation to property located in cities and towns. Article 13, section 4, of the Rhode Island Constitution provides in pertinent part:

"**Powers of general assembly over cities and towns.** The general assembly shall have the power to act in relation to the property, affairs and government of any city or town by general laws which shall apply alike to all cities and towns, but which shall not affect the form of government of any city or town."

Zoning, land development and subdivision regulations constitute a valid exercise of police power, and are matters of statewide concern. G.L.1956 §§ 45–24–27 through 45–24–72. As we stated in *O'Neil*, "[g]enerally, state laws of statewide application pre-empt municipal ordinances on the same subject if the Legislature intended that they thoroughly occupy the field." *O'Neil*, 617 A.2d at 109 (citing *Easton's Point Association, Inc. v. Coastal Resources Management Council*, 559 A.2d 633, 636 (R.I.1989)). Further, local legislation embodied in charter, ordinance or other regulation is pre-empted by statewide legislation "if it disrupts the state's overall scheme of regulation * * *." *O'Neil*, 617 A.2d at 109.

■■■ The petitioners argue that because "the General Assembly has not amended or repealed § 45–22–1, municipalities such as East Greenwich may continue to administer its local laws relating to land development and subdivisions as set forth under its Charter or under other such special legislation." As we stated previously, however, § 45–22–7(d) reveals the Legislature's intent to continue to assign duties to a town's planning board. More importantly, however, the town

elected to have the platting and subdivision board function as the sole permitting authority pursuant to § 45–24–47(B) which requires all municipalities to submit land development projects, including cluster subdivision, to the planning board or commission for approval under the subdivision regulations. That statute also requires compliance with procedures established by § § 45–23–25 through 45–23–74. Therefore, we must conclude that the Legislature clearly intended to establish uniform procedures for land development throughout the state and in explicit terms superseded local regulations, whether authorized by charter provisions or pre-existing special statutes.

█ The petitioners further argue that the Development Review Act, as construed by the Superior Court, would affect the form of government of the town in that it would prohibit the town council from acting as a platting board as set forth in the town charter and ordinance and implementation thereof. We reject this argument because the procedural requirements for implementation of the Development Review Act do not constitute an infringement upon the town form of government. The requirement that each city and town repose certain duties in a "planning board" with the function of review conferred upon the zoning board of review acting as a board of appeal, does not affect the town form of government. Rather, these requirements constitute a mechanism for the implementation of a statute of statewide concern. We said in *Lynch v. King*, 120 R.I. 868, 391 A.2d 117 (1978), that municipalities were the creatures of the Legislature, "having no inherent right to self-government but deriving all of their authority and power from the Legislature." *Id.* at 876, 391 A.2d at 122 (citing *City of Providence v. Moulton*, 52 R.I. 236, 246, 160 A. 75, 79 (1932)). We went on to observe that the Home Rule amendment "altered this traditional view by empowering cities and towns to legislate with regard to all local matters." *Id.* at 876, 391

A.2d at 122. In spite of this interpretation, we point out that the "enactment of that amendment in no way affected the sovereignty of the state with regard to the exercise of the police power * * *." *Id.* We applied that principle in *Lynch* to hold that the Police Officers' Bill of Rights, which substituted the judgment of a panel of police officers for the judgment of the Mayor as the Chief Executive of the City of Pawtucket, did not affect the form of government of that municipality. Rather, the creation of a Bill of Rights panel was a mechanism to implement the statewide statute relating to the Officers' Bill of Rights enacted by the General Assembly. This statute changed the relationship between the Mayor in his capacity as Public Safety Director and police officers who would otherwise be subject to his disciplinary powers.

Similarly, the comprehensive land development and zoning statutes adopted by the General Assembly require uniform mechanisms and functions for their enforcement and implementation. The creation of such mechanisms and functions did not affect the form of government of any city or town, but were essential elements in the uniform enforcement of statutes of statewide concern.

For the reasons stated, the petition for certiorari is denied. The writ heretofore issued is quashed. The judgment of the Superior Court is affirmed. The papers in the case may be remanded to the Superior Court with our decision endorsed thereon.