DECISION
This is an appeal from a decision of the Town of Cumberland Zoning Board of Review ("Board"). Stephen and Lori Carr ("plaintiffs") seek reversal of the Board's decision recorded in the Land Evidence Records of the Town of Cumberland on January 27, 1999. In its decision, the Board sustained the decision of the Cumberland Planning Board which denied the plaintiffs' request for subdivision approval. This Court has jurisdiction of this appeal pursuant to R. I. Gen. Laws § 45-23-71.
 Facts/Travel
Stephen and Lori Carr ("plaintiffs") are the owners of certain real estate in Cumberland, Rhode Island located on High Street and designated as Assessor's Plat 10, Lot 220. In an effort to subdivide their property, the plaintiffs submitted an Application for a Major Subdivision to the Cumberland Planning Board on or about July 7, 1998. The plaintiffs sought to subdivide the property in question into three separate lots. The Town Planner classified the application as a major subdivision because two of the lots required a waiver or modification from the lot depth to lot width requirements of the Land Development and Subdivision Regulations ("Regulations"). The Regulations provide that "the proportion of lot depth to lot width shall not exceed the ratio of 2.5 to 1." Article E, Section 4. Lots 1 and 2 of the plaintiffs' proposed plan for the subdivision did not comply with this requirement.
According to the plaintiffs' proposal, Lot 1 would contain 7,478 square feet in area with over 50 feet of frontage and over 148 feet of lot depth, Lot 2 would contain 7,378 square feet with over 50 feet of frontage and 150 feet of lot depth, and Lot 3, which included the existing house, would contain over 63 feet of frontage and nearly 150 feet of lot depth.[1]
The Planning Board held a pre-application hearing on July 29, 1998. At that meeting, a member of the Planning Board stated that Lots 1 and 2 did not comply with the Regulations and that the Planning Board would not approve the application. The Board continued the matter, however, until September 30, 1998. At the subsequent meeting, the plaintiffs' attorney acknowledged the fact that Lots 1 and 2 did not comply with the lot depth to lot width ratio of 2.5 to 1 required by the Regulations.
In support of their request for a waiver or modification of those requirements, the plaintiffs presented three expert witnesses: a traffic expert, a real estate and appraisal expert, and an expert in land use law, zoning and planning. The plaintiffs' application to subdivide their property under the proposed plan was denied by the Planning Board on or about September 30, 1998 and recorded in the Cumberland Land Evidence Records on October 29, 1998.
The plaintiffs appealed the decision of the Planning Board to the Town of Cumberland Zoning Board of Review in accordance with Article 9-9(a) of the Cumberland Zoning Ordinance. On appeal, the plaintiffs argued that the Planning Board's decision to deny their application was based on clear error and lack of support by the weight of the evidence in the record. Specifically, the plaintiffs averred that none of their experts' opinions were contradicted and argued that the Planning Board did not introduce any factual observations to the contrary. The plaintiffs also contended that their proposed deviation from the Regulations was so minor that enforcing the requirements of the Regulations as written would deprive them of one lot and result in an undue hardship. Nevertheless, the Board subsequently denied the appeal on or about January 13, 1999, and recorded its decision on or about January 27, 1999 in the Land Evidence Records of the Town of Cumberland.
On February 12, 1999, the plaintiffs filed a complaint in the Superior Court against the Board and its various members in accordance with Cumberland Zoning Ordinance Article 9-11 and R. I. Gen. Laws §45-23-71[2] The plaintiffs claim that they are aggrieved by the decision of the Board upholding the Planning Board's decision to deny their pre-application subdivision request. They contend that the Board's decision upholding the Planning Board's denial of their subdivision application is neither founded upon the record of the public hearing nor free from error of law. First, the Plaintiffs allege that the "[d]ecision of the Appeals Board does not rest upon competent evidence and must be overruled." They state that the Planning Board failed to challenge any of the expert testimony concerning the proposed subdivision during the hearing and that a "Planning Board must offer facts or information into the record of the public hearing to justify rejection of such testimony." The plaintiffs assert that it was only after the hearing that the Planning Board attempted to justify its decision in the form of a written decision that contained facts refuting the expert's opinions. As a result, the plaintiffs argue their due process rights were violated because the Planning Board's decision was the basis for the Board's decision. Second, the plaintiffs argue that the "decision of the Planning Board to deny the waiver was arbitrary and capricious and must be reversed." They urge the Court to hold that the term undue hardship in this context should mean "more than a mere inconvenience" rather than "denial of all beneficial use."
Regardless of the standard, however, the plaintiffs argue that literally enforcing the Regulations would constitute a substantial interference with their rights and result in economic hardship. They maintain that the Planning Board's decision was too harsh, that their subdivision proposal does not violate Cumberland's Comprehensive Plan or the zoning code, and that the Planning Board's decision and the Zoning Board's decision to sustain that decision should be reversed.
The defendants counter in their memorandum that the decision of the Board was based upon competent evidence as indicated by the minutes of the Planning Board meetings. They argue that the Board's decision was based not only upon the Planning Board's written decision, but upon the entire packet received from the Planning Board, which included the minutes of the meetings. The minutes, the defendants argue, show that Planning Board members had numerous concerns and responses to the proposed subdivision and expert opinions. Finally, the defendants conclude that it is clear from the record that the Planning Board did not consider the request for a waiver/modification reasonable or within the general purpose and intent of the Regulations and that the plaintiffs did not show that literal enforcement of the Regulations was impractical or would result in undue hardship.
 Standard of Review
Appeals to the Superior Court for review of Zoning Boards' decisions regarding the subdivision of land are brought under R.I. Gen. Laws §45-23-71. Subsection (c) of that statute states:
 "The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"Pursuant to § 45-23-71, judicial review of board decisions is not de novo." Munroe v. Town of East Greenwich, 733 A.2d 703, 705 (R.I. 1999). "[T]he Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact. Id. Rather, the Superior Court's review is "confined to a search of the record to ascertain whether the board's decision rests upon `competent evidence' or is affected by an error of law." Id. (quoting Kirby v. Planning Board of Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)).
Appeals to a town's Board of Appeals or Zoning Board for review of a planning board or administrative officer's decision are brought pursuant to R. I. Gen. Laws § 45-23-70. "The board of appeal shall not substitute its own judgment for that of the planning board or the administrative officer but must consider the issue upon the findings and record of the planning board or administrative officer." R. I. Gen. Laws § 45-23-70(a). "The board of appeal shall not reverse a decision of the planning board or administrative officer except on a finding of prejudicial error, clear error, or lack of support by the weight of the evidence in the record. Id.
 The Planning Board Decision
According to Cumberland's Regulations, the Planning Board only may grant a waiver and/or a modification from its requirements if (1) the plaintiffs would suffer undue hardship if it were not granted, or (2) if it were in the best interest of good planning practices and/or design as evidenced by consistency with the Cumberland Comprehensive Community Plan 1991-2010 and the Cumberland Zoning Ordinance. Section 26(B) of Cumberland's Land Development and Subdivision Regulations provides:
 "(B) Waiver and/or modification of requirements. The planning board shall have the power to grant waivers and/or modifications from the requirements for land development and subdivision approval as may be reasonable and within the general purposes and intents of the provisions of the regulations. The only grounds for such waivers and/or modifications shall be where the literal enforcement of one or more provisions of the regulations is impracticable and will exact undue hardship because of peculiar conditions pertaining to the land in question or where such waiver and/or modification is in the best interest of good planning practices and/or design as evidenced by consistency with the Cumberland Comprehensive Community Plan 1991-2010 and the Cumberland Zoning Ordinance.[3]"
At the initial Planning Board hearing on July 29, 1998, a Planning Board member, in response to plaintiffs' requested waiver/modification, stated that "the Town is not in favor of establishing smaller lots because it increases density." That same Board member also was concerned with the amount of traffic on the road already. Mr. Carr responded by noting that the Planning Board had approved a ten lot subdivision down the street. The Board then continued the matter until a later hearing date.
During the next Planning Board meeting on September 30, 1998, the plaintiffs offered opinions from three different experts in an effort to obtain a waiver from the 2.5 to 1 ratio found in the Regulations. The plaintiffs' traffic expert testified that a traffic study showed that the proposed subdivision would be "well integrated with the surrounding neighborhood" and "existing infrastructure."
He also found that the subdivision would not be "adverse to the `public health, safety and welfare of the surrounding area as a whole'" and that there would be no impact on traffic flow.[4] According to the minutes of the hearing, the only question asked of the traffic expert was whether there was an accident history on this site, to which the expert replied that it was not a high hazard area.
The plaintiffs' real estate expert concluded that the proposed subdivision would be consistent with the Town's Comprehensive Plan and would "promote the general welfare of the Town" and that "the values of the properties in the surrounding areas [would] not suffer a negative impact." He also stated that "[t]he petition [would] create an affordable type of house and [would] stay in character of the area" and that it would "meet the criteria of the comprehensive plan." A member of the Planning Board questioned this expert about whether the surrounding homes had more than 50 feet of frontage. The expert admitted that "most homes appear to have" in excess of that frontage, but he nonetheless believed that "less frontage on a particular lot does not have an adverse affect on a larger lot."
The plaintiffs' land use expert concluded that (1) the proposed subdivision meets all the zoning requirements for its zone, (2) the proposed subdivision is in harmony with Cumberland's Comprehensive Plan, (3) the land is not unsuitable for building purposes, (4) not allowing a modification would be impracticable and would exact undue hardship because of the site's peculiar conditions, and (5) it would be in the "best interest of good planning practices and design as is evidenced by consistency with the comprehensive plan."
In response, a Planning Board member expressed the view that "combining lots 1 and 2 might be the best subdivision of this land." A member of the Planning Board also expressed the opinion that the proposed subdivision would create an increase in density. He also stated that the subdivision does not fit with the existing neighborhood, it does not address a Commercial-1 zone properly, it does not conform with the Comprehensive Plan, and it does not have the requisite buffer zones. The Planning Board then voted to deny the plaintiffs' request for a waiver/modification from the Regulations and voted to enter the findings of fact into the record.
The Planning Board's "Findings of Fact and Decision" was recorded in the Land Evidence Records for the Town of Cumberland in Book 771 at page 106 on October 29, 1998. The Board made the following findings of fact:
 "Pursuant to such hearing and testimony by appropriate representatives of the land owner and/or proposed developer, the Cumberland Planning Board, upon careful deliberation and in accordance with the provisions of Section 24. Procedures — Required Findings, has arrived at and agreed upon the following findings of fact by a majority vote:
 (1) Approval of the subdivisions proposed will require a waiver from the 2.5 to 1 lot depth to lot width ratio (Section 11. Design Standards, Article E — Lots — Land Development Subdivision Regulations).
 (2) The proposed subdivision would result in the development of 2 lots with 50 feet of frontage and one lot with 63.5 feet of frontage.
 (3) The settlement pattern of the area surrounding this subdivision is such that housing has developed on lots with frontage in excess of 75 feet on average or on double lots with combined frontage of 100 feet or more.
 (4) The development of these lots for residential uses will result in a significant deviation from the settlement pattern of this area and would have a negative impact on the neighborhood.
 (5) Development which is not well integrated into the surrounding neighborhood because of its physical character is not in the best interest of good planning and runs contrary to purpose #4 and #5 of Section 1., Article A. — Enactment, Authority and Purpose of the Land Development Subdivision Regulations that have been developed in accordance with the Cumberland Comprehensive Plan 1991-2010.
 (6) Granting of the requested waiver requires that the applicant demonstrate the imposition of an undue hardship arising from peculiar conditions of the land if the waiver is not granted (Section 26. Waivers — Modifications and Reinstatement of Plans, Subsection (B)). The applicant did not assert a hardship claim in asking for this waiver. The applicant has the ability to subdivide the subject parcel into two (2) lots which meet all the requirements of the Land Development Subdivision Regulations and the Zoning Ordinance. A two (2) lot subdivision would be more in keeping with the surrounding neighborhood and therefore, would be in harmony with the purposes of these regulations, the Cumberland Comprehensive Plan 1991-2010 and would be in the best interest of good planning."
 The Zoning Board Decision
On appeal to the Zoning Board, the plaintiffs argued that the Planning Board decision to deny their application was based on clear error and lack of support by the weight of the evidence in the record. Essentially, the plaintiffs asserted that none of their experts' testimony was contradicted, that the Planning Board introduced no factual observations to the contrary, and that their proposed deviation from the Regulations was so minor that enforcing its requirements would cause a loss of one lot and result in an undue hardship. At the Zoning Board meeting, the Board also heard testimony from a witness from the audience, Mr. Vern Pereira; the Town Planner, Michael Phillips; and the Building Official, Brian DaCosta.
The Board discussed the findings of fact made by the Planning Board and agreed that the issue of increased density had become a concern for the Town of Cumberland and its residents. The Chairperson, Mrs. Theresa McMichael, also agreed with the Planning Board that a "two-lot subdivision would be more in keeping with the surrounding neighborhood and, therefore, would be in harmony with the purposes of these regulations, the Cumberland Comprehensive Plan, and would be in the best interest of good planning." A Board member then moved to uphold the Planning Board decision to deny the plaintiffs' application. The motion passed four to one, and the Board recorded its final decision in Cumberland's Land Evidence Records on January 27, 1999.
 The Appeal to this Court
In reviewing the decision of the Planning Board, as affirmed by the Zoning Board of Review, this Court must search the record of the Planning Board proceedings to ascertain whether its decision rested upon "competent evidence." Munroe at 705. In making that determination, this Court cannot consider the credibility of witnesses, weigh the evidence, or make its own findings of fact. See Munroe, 733 A.2d at 705. Our Supreme Court has defined "reasonably competent evidence" as "any evidence that is not incompetent by reason of being devoid of probative force as to the pertinent issues." Zimarino v. Zoning Board of Review of Providence, 187 A.2d 259, 261 (R.I. 1963).
In Restivo v. Lynch, 707 A.2d 663, 664 (R.I. 1998), the Supreme Court recently had occasion, in an appeal from the denial of subdivision approval not unlike the instant appeal, to determine whether competent evidence existed to support the decision of the municipality. In that case, a developer petitioned the Supreme Court to review a Superior Court judgment affirming a decision of the East Providence City Council that had denied the developer's request for approval of a subdivision of land. Id. In both its appeal to the Superior Court and its petition to the Supreme Court, the developer claimed that the decision was "arbitrary, and capricious and constituted an abuse or clearly unwarranted exercise of discretion, that the council denied petitioner a fair and impartial hearing in violation of the due process requirements of the Rhode Island and United States Constitutions, and that the council's decision was clearly erroneous in view of the evidence on the record." Restivo, 707 A.2d at 666.
As proof of "competent evidence" upon which the City Council could rely, the trial court observed that the developer's expert had "conceded that the potential for ground water basement flooding in this particular subdivision was the worst he had worked on for such a wide area." Id. The transcript of the City Council hearing also showed that the developer's experts were extensively questioned and that much of the testimony and evidence of the developer was either discredited or questioned. Id. at 669-70. Furthermore, the trial justice pointed out that "members of the Council also based their decision on personal knowledge of the poor drainage history of the proposed site." Id. at 666 (citing Perron v. Zoning Board of Review of Burrillville, 369 A.2d 638, 641 (R.I. 1977) ("evidence gleaned from the personal observations of zoning board members constituted legally competent evidence upon which a finding may rest. . .if the record discloses the nature and character of the observations upon which the board acted")). In Restivo, the record showed that many council members made personal observations of the area, and two members actually went to the proposed area after a rainfall for observation.
In the present case, a review of the record reveals that the Planning Board found that the "development of these lots for residential uses [would] result in a significant deviation from the settlement pattern of this area and would have a negative impact on the neighborhood" and thus would not conform to Cumberland's Comprehensive Plan. The Planning Board found that the subdivision proposal would increase density, not conform to the average frontage of the surrounding area, and not be in the best interest of good planning. It also determined that the proposed subdivision would not fit within the settlement pattern of the area and would run contrary to "purpose #4 and #5 of Section 1., Article A. Enactment, Authority and Purpose of the Land Development Subdivision Regulations that have been developed in accordance with the Cumberland Comprehensive Plan 1991-2000."[5] The Planning Board noted that the lots would not be well integrated into the surrounding area because the neighboring lots have an average frontage in excess of 75 feet. The Planning Board also found that the land could be subdivided into two lots instead of three. A review of the record establishes that these findings and conclusions of the Planning Board are not clearly erroneous and constitute competent evidence in support of the Planning Board's decision.
The plaintiffs argue that the expert testimony that they offered was uncontradicted and, therefore, the conclusions made by the Planning Board are not supported by the evidence. As noted in Restivo, however, "there is no talismanic significance to expert testimony" and "[i]t may be accepted or rejected by the trier of fact," or in this case, by the Planning Board. Restivo at 672. Moreover, also similar to Restivo, the subject matter in this case is not so arcane that inferences from either lay testimony or personal observations could not be drawn by members of the Planning Board or Zoning Board based, in part, on their own expertise. See Restivo, 707 A.2d at 671. Testimony and discussion, either from members of the Planning Board or comments from the public, describing the physical attributes of the area in question is competent evidence upon which the Planning Board could have relied when making its decision.
Cumberland's Comprehensive Plan states that one of Cumberland's goals and policies is to "encourage residential development as extensions of existing neighborhoods and community areas." The Plan also states that "[e]ncouraging residential growth in Cumberland's established villages and neighborhoods will maintain the rural/suburban atmosphere identified by respondents to the Town's community survey as a prime reason for their residence in the town." Cumberland's Comprehensive Plan and the record evidence in this case show that the residents and the Town are concerned with density. The Planning Board and the Zoning Board are certainly in the best position to determine whether a proposal is in the best interest of good planning practices and design.
The Planning Board found that the current proposal was not in the best interest of good planning practices and design as evidenced by inconsistency with the Comprehensive Plan and Cumberland's Zoning Ordinance. It also found that the plaintiffs asserted no claim that strict enforcement of the lot depth to width ratio of the Regulations would exact undue hardship because of peculiar conditions pertaining to the land in question. Even assuming that plaintiffs had asserted such a claim in their application for subdivision approval, the Planning Board found that they would suffer no undue hardship if a waiver or modification of the lot depth to width ratio requirements were not granted because they have the ability to subdivide the subject parcel into two lots which meet all of the requirements of the Land Development Subdivision Regulations and the Zoning Ordinance. The Zoning Board affirmed the decision of the Planning Board after considering the issues upon the findings and record of the Planning Board. In making its decisions, this Court finds that neither the Planning Board nor the Zoning Board committed reversible error. This Court will not substitute its judgment for that of the Planning Board or the Zoning Board, see R. I. Gen. Laws § 45-23-71, and will not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact. See Munroe, 733 A.2d at 705. The decision of the Planning Board, as affirmed by the Zoning Board, is amply supported by competent evidence of record and is not otherwise arbitrary or capricious or infected by any error of law.
 Conclusion
Accordingly, the decision of the Zoning Board of Review, which sustained the decision of the Planning Board denying plaintiffs their requested waiver or modification of the lot depth to lot width requirements of the Regulations and their request for subdivision approval premised thereon, is hereby affirmed. Counsel shall agree upon a form of order and judgment consistent with this decision and submit it to the Court forthwith for entry.
[1] The defendants argue in their memorandum to the Superior Court that Lot 1, as proposed by the plaintiffs, would have only 41.17 feet of frontage as opposed to the over 50 feet of frontage indicated by the plaintiffs in their memorandum. Plaintiffs respond in their reply memorandum, however, that the defendants failed to acknowledge an additional 8.88 linear feet between the bound and the end of the property line. Either measurement, 41.17 or 50.05 feet, does not comply with the 2.5 to 1 ratio required by Cumberland's subdivision regulations, and a waiver or modification still would be required for either one.
[2] Specifically, the complaint named as defendants the Board and its members: Theresa McMichael, Carolyn A. Connors, John Bessette, Jr., Thomas Ryan, Charles D. Wilk, George Costa, and Gregory Bodell.
[3] This text essentially mirrors that of the state statute at R. I. Gen. Laws § 45-23-62(b).
[4] The traffic expert concluded that 20 trips per day would be generated under the proposed subdivision. He also stated that the "use proposed would be less intense and there would be no reduction of levels of service." He noted that the minimum site stopping distance for the area is 200 feet and that in this subdivision proposal the stopping distance would be 400 feet. He concluded by stating that the proposed residential development would not create congestion or a traffic hazard.
[5] Section 1 states:
 "These regulations are intended to address the following purposes:
 . . .
 (4) Promote design of land development and subdivisions which are well-integrated with the surrounding neighborhoods with regard to natural and built features, and which concentrate development in areas which can best support intensive use by reason of natural characteristics and existing infrastructure;
 (5) Encourage local design and improvement standards to reflect the intent of the Cumberland Community Plan 1991-2010 with regard to the physical character of the various neighborhoods and districts of the town."