DECISION
Appellant Commerce Park Commons, LLC and related corporate entities ("Commerce Park") challenge the Town of West Greenwich Zoning Board of Review's ("Board") decision affirming the ruling of the Town of West Greenwich Planning Board ("Planning Board"), which approved both phases of Immunex Manufacturing Corporation's ("Immunex") land development project and preliminary plan approval for Phase I. This Court has jurisdiction pursuant to G.L. 1956 § 45-23-71.
 FACTS AND TRAVEL
Commerce Park, an abutting land owner, opposes Immunex's expansion of its current facility located in the West Greenwich Technology Park. Commerce Park argues that the project will use over 1.2 million gallons of water per day, which cannot be supported by the park's current infrastructure. Commerce Park is also concerned that the project's design will direct all of its drainage toward Commerce Park's property.
Immunex is the manufacturer of a medication called ENBREL, which purportedly reduces the symptoms of rheumatoid arthritis. Immunex is currently in the process of upgrading its existing facilities to allow it to produce ENBREL at its Rhode Island site.
Immunex has proposed two phases to this project. Phase I includes the construction of a process manufacturing building and a central utility building. Phase II includes the construction of a quality control laboratory, administration building, and a parking structure.
Immunex submitted its application to the Planning Board for approval of its Master Plan and Preliminary Plan for Phase I of the project. On November 5, 2001, the Planning Board granted the Master Plan Approval for both phases of the project and the Preliminary Plan Approval for the first phase. Commerce Park appealed the decision of the Planning Board to the Zoning Board of Review, sitting as the Planning Board of Appeal, on November 23, 2001. On January 23, 2002, the Zoning Board of Review affirmed the decision of the Planning Board.
On January 22, 2002, Commerce Park filed its appeal to this Court. The appeal was amended on March 27, 2002. Commerce Park claims that the Zoning Board of Review and the Panning Board's decisions granting the approval of the Master Plan for both phases and the Preliminary Plan for Phase I violated its rights under R.I.G.L. § 45-23-71. Commerce Park argues that the Planning Board made its ruling without obtaining detailed reports from the West Warwick Regional Wastewater Treatment Facility ("WWRWTF") and the Kent County Water Authority ("KCWA"), as required by the West Greenwich Subdivision Regulations. Furthermore, Commerce Park contends that the Planning Board erred when it failed to review basic hydrogeological data and to require a site analysis to determine the impact of the proposed site drainage system.
 STANDARD OF REVIEW
The review of a zoning board of review's decision is controlled by G.L. 1956 § 45-23-71(c), which provides that the Superior Court
 "shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"Pursuant to § 45-23-71 judicial review of board decisions is not de novo." Munroe v. Town of East Greenwich, 733 A.2d 703, 705 (R.I. 1999). "The Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact." Id. "Rather `its review is confined to a search of the record to ascertain whether the board's decision rests upon `competent evidence' or is affected by an error of law.'" Id. (quoting Kirby v. Planning Board of Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)).
Town of West Greenwich's Review of Reports From the Applicable Water Utilities
Commerce Park contends that Article III(B)(2) and (3) of the West Greenwich Subdivision Regulations require that an applicant for Master Plan Approval submit to the applicable agencies a copy of the Master Plan narrative report for review and comment. Commerce Park specifically argues that the Zoning Board of Review and the Planning Board erred when they failed to require and review additional reports examining the impact on the ability of the KCWA and the WWRWTF to supply service to the industrial park. Commerce Park asks this Court to remand this matter to the Planning Board and require it to review further studies examining the impact of this proposal on the utilities' ability to support this expansion.
Immunex contends that it has complied with the provisions of Article III (B). Furthermore, it argues that the Planning Board had adequate information under this provision to make its decision. Both the KCWA and the WWRWTF acknowledged that they had commitments to provide service to the project and to work on appropriate upgrades to the system. Thus, Immunex states that this decision should be upheld, and the commerce park's appeal should be denied.
The West Greenwich Subdivision Regulations state that when a Master Plan is submitted for approval, "the Planning Board shall review the adequacy of existing and projected future public improvements, services and facilities which may be impacted." West Greenwich Subdivision Regulations, art. III, § B 1. Furthermore, these regulations require that "the applicant submit to the applicable municipal, state or private agency . . . a copy of the Master Plan narrative report for their review and comment." Id. It is the responsibility of the applicant to request the agency to provide its comments in writing to the Planning Board. "If comments are not received . . . it shall be assumed that the agency does not wish to comment." Id. Finally, each department or agency that is requested to comment shall deliver any supplementary information indicating:
 "a. An estimate of the impact of the subdivision on the facilities and/or services provided by the department or agency;
 b. Whether existing facilities and/or services are adequate to serve the subdivision residents;
 c. Whether plans for the necessary improvements to existing facilities and/or services are included in the town's Capital Improvement or are otherwise planned; and,
 d. An estimate of how long it would take to provide any necessary improvements to existing facilities and/or services." Id.
In the instant case, it is apparent that the appropriate utilities were informed and did comment on the impact of Immunex's proposed development project. On September 14, 2001, the KCWA and the WWRWTF provided letters commenting on Immunex's proposal to add to its existing facility in West Greenwich. In its letter, the WWRWTF acknowledged that it was currently servicing Immunex's facility. Furthermore, WWRWTF stated that it was "working with Immunex to meet the facility's significant expansion requirements." (Letter from the WWRWTF of 9/14/01.) WWRWTF also stated that Immunex was willing "to pay its share of the costs for upgrading these services and [that] discussions on this will begin once the costs are known." Id.
The letter from the KCWA stated that it was currently providing service to this site and would continue to do so in the future. KCWA stated that it was aware of Immunex's plans for expansion and that it was examining its ability to meet the increased needs. KCWA also acknowledged that Immunex was willing to "pay the cost of engineering and modeling to assist in this review." (Letter from the Kent County Water Authority of 9/14/01.) Finally, KCWA stated that "[i]t appears from the preliminary review of the Authority system that it may be possible to meet the current project needs."
Id.
The Planning Board was provided with copies of these letters before it reached its decision. Moreover, the Board relied on these letters when determining the impact of this plan on the utilities. The Planning Board found that:
 "[b]ased on the comments received from West Warwick [sic] Regional Wastewater Treatment Facility, Kent County Water Authority, Narragansett Electric, Providence Gas, and Rhode Island Department of Environmental Management . . . the existing and projected future improvements, together with both public and private services and facilities will be adequate to accommodate the proposed expansion." (Planning Board Decision at 6.)
It is clear from the Subdivision Regulations that the Planning Board has discretion to determine whether it believes that the utilities can adequately meet the needs of the existing and proposed structure. In this case the KCWA and the WWRWTF assured the Planning Board that the issue was being investigated and that they were working on providing any needed upgrades. It was also evident from these letters that Immunex was willing to support any needed upgrades to the existing systems. Thus, this Court is satisfied that the Planning Board was aware of the status quo and was satisfied that the utilities and Immunex were working together to provide for any needed upgrades to provide service to this area.
 Hydrogeological Data
Commerce Park alleges error on the part of the Planning Board and the Zoning Board of Review for failing to consider basic hydrogeological data. Commerce Park contends that during the application process, the Town asked Immunex to provide hydrogeological data relating to Phase II of the project. Furthermore, Commerce Park alleges that Immunex claimed that the information was not available. Commerce Park questioned these assertions and subpoenaed the information. Commerce Park claims that this subpoena produced information, which existed at the time of the Planning Board's hearings, which related to the hydrogeological data. Thus Commerce Park argues that the decision of the Planning Board should be overturned, because without this information, the issue of the proposed drainage plan was never properly considered. Immunex rejects that argument claiming that the Planning Board had adequate information before it to support its decision.
Rhode Island General Laws § 45-23-71(c) requires that this Court not substitute its judgment for that of the Planning Board when considering the weight of the evidence before the board. Commerce Park asks this Court to find that the Planning Board lacked sufficient hydrogeological data to reach its decision. Reviewing the transcripts of the hearings, this Court notes that the Planning Board heard testimony relating to this issue and was satisfied at that stage of the proceedings with the information before it. It is not for this Court to substitute its judgment for that of the Planning Board.
As part of its hearings, the Planning Board heard the testimony of Albert Bisacky, P.E., an engineer for Immunex. Mr. Bisacky testified that he did a series of borings and test pits to get an indication of the groundwater levels in that area. Tr. at 51. He further testified that these tests indicated that "[t]he groundwater elevations are well below the elevations that we require for the infiltration areas." Id. at 52. Mr. Bisacky further testified that he may do some additional testing; however, this information would not be available until the second phase of the application. Id. at 84.
It is clear from the record that the Planning Board heard some testimony relating to the issue of runoff groundwater. While not all the information may have been before the Planning Board at this stage of the proceedings, it had adequate information to support its decision. Furthermore, the Planning Board was satisfied that it would be provided with more information as part of Phase II of this project. The Planning Board stated as a condition of its approval that:
 "Prior to the Planning Board's consideration of Preliminary Plans for Phase II of construction the applicant shall receive approval from RIDEM for the UIC system and shall present the following information regarding surface and subsurface water to the Town's Consulting Engineer.
 a. results of soil borings taken across the areas proposed for UIC adequate to characterize the types of soil and the homogeneous nature of the soils; and,
 b. determination of the high ground water table and direction of flow in the areas proposed for the UIC; and,
 c. results of percolation tests at the depth of the proposed UIC across the areas proposed for the system; and,
 d. specifications on the type of water quality treatment proposed and proposed maintenance system." (Planning Board Decision at 9.)
Upon review of the transcripts of the hearings and the decision of the Planning Board, this Court finds that the Planning Board had sufficient information before it to make its determination. Also, the Planning Board required that Immunex provide more information regarding the surface water as part of the approval process for Phase II.
 Site Analysis
Finally, Commerce Park alleges that the West Greenwich Subdivision Regulations required that a site analysis be completed in order for Immunex to secure master plan approval. Commerce Park contends that Article XIII (G)(2) requires that the scope of the site analysis be discussed during the pre-application meeting and presented by the applicant at the review of the master plan. Commerce Park argues that the site analysis was not discussed at the pre-application meeting, and thus the scope and content of the site analysis were never established. Thus, Commerce Park asks this Court to remand this case to the Planning Board to establish an appropriate site analysis.
Immunex argues that this project was not a subdivision, rather a land development project. As such, the West Greenwich Subdivision Regulations do not require that a site analysis be conducted. Immunex contends that the project was proposed for a preexisting industrial park and did not involve the subdivision or re-subdivision of the land. Therefore, Immunex believed that the Planning Board did not require a site analysis. Furthermore, Immunex points to the fact that the Planning Board found that the project was consistent with West Greenwich's Comprehensive Plan for the industrial park.
The pertinent provisions of the West Greenwich Subdivision Regulations state:
 "(1.) The purpose of subdivision and site design is to create a functional and attractive development, to minimize adverse impacts, and to ensure that a project will be an asset to the community. To promote this purpose, land development projects and subdivisions shall conform to the following standards which are designed to result in a well-planned community without adding unnecessarily to development costs.
 (2.) An analysis of the subdivision site and nearby areas shall be required by the Planning Board for all major subdivisions. The scope and content of the site analysis shall be discussed during the pre-application meeting and shall be presented by the subdivider during the Master Plan stage of Review. Such an analysis maybe required by the Planning Board for minor subdivisions if the Board finds that the proposed development may have a negative impact on the character of the surrounding neighborhood. Such a site analysis shall include written Master Plan Narrative and a graphic analysis of the following characteristics of the development site: site context; geology and soil; agricultural lands; wetlands; topography; climate; ecology; existing vegetation, structures, and road networks; visual features; and past and present use of the site." West Greenwich Subdivision Regulations, art. XIII, § G1 and 2.
The pertinent definitions of the Subdivision Regulations are:
 "LAND DEVELOPMENT PROJECT: A project in which one or more lots, tracts, or parcels of land are to be developed or redeveloped as a coordinated site for a complex of uses, units, or structures, including, but not limited to, planned development and/or cluster Development for residential, commercial, institutional, recreational, open space, and/or mixed uses as may be provided for in the zoning ordinance.
 SUBDIVISION: The division or re-division of a lot, tract, or parcel of land into two or more lots, tracts or parcels. Any adjustments to existing lot lines of a recorded lot by any means shall be considered a subdivision. All resubdivision activity shall be considered a subdivision. The division of property for purposes of financing constitutes a subdivision." West Greenwich Subdivision Regulations, art. II.
Immunex's application for master plan approval involved a land development project, and not a subdivision. The West Greenwich Subdivision Regulations require a site analysis for all major subdivisions. Although land development projects are required to conform with site design standards, § G2 does not require the submission of a site analysis for such a project. Furthermore, even if it had required a site analysis, the Planning Board was well aware of the site proposed for development. In fact, in their decision, the Planning Board indicated that "[t]he Land Development Project is consistent with the requirements of the West Greenwich Comprehensive Plan, as adopted in December 1995 . . . ." (Planning Board Decision at 5.) The Planning Board also noted that the land proposed for development was zoned for industrial purposes, and met the goals for the development of the industrial park.
This Court finds that the Planning Board had sufficient information before it to make its decision. The Planning Board was not obligated to require Immunex to submit a site analysis. It is also apparent form the record that the Planning Board was satisfied that the plan was consistent with the Comprehensive Plan established for this industrial park. Therefore, this Court need not remand this case and require that a site analysis be supplied.
 CONCLUSION
After review of the entire record, this Court finds that the decision of the Zoning Board of Review, sitting as the Planning Board of Appeal, is supported by the competent evidence of record and is not affected by error of law. Accordingly, the decision of the Zoning Board of Review, upholding the Planning Board's decision approving both phases of Immunex's land development project and preliminary plan approval for Phase I, is hereby affirmed.
Counsel shall submit the appropriate judgment for entry by the Court after notice.