DECISION ON REMAND
Before this Court is the Rhode Island Supreme Court's remand of two consolidated appeals from a decision of this Court that affirmed a decision of the Zoning Board of Review of the City of Providence ("Board"), granting the applicant a variance from dimensional and parking regulations. In its remand order, M.P. 00-323, the Supreme Court vacated this Court's judgment affirming the Board and instructed this Court to reconsider its earlier decision in light of the Supreme Court's intervening decision in Sciacca, et al. v. Caruso, et al., 769 A.2d 578
(R.I. 2001). After further consideration, this Court vacates the Board's November 16, 1999 decision and remands this case to the Board for reconsideration in light of Sciacca.
 Facts and Travel
On August 25, 1999, Stonehenge Partners, LLC and 215 Meeting Street, LLC ("owners") filed an application with the Board for a special use permit and for a variance from the dimensional and parking regulations set forth in the Providence Zoning Ordinance ("Ordinance") for the properties in question. The two properties in question are lots located near each other in the city's C-2 zoning district. One lot is located on the corner of Thayer Street and Meeting Street (Lot 1), while the other lot is located on Meeting Street (Lot 2).[1] The owners proposed to erect a building, estimated to contain approximately 5,302 square feet of space, on Lot 1 and to use Lot 2 as a parking lot. The owners planned to include in the proposed building a restaurant, with a total area of more than 2,500 square feet that in a C-2 district requires a special use permit, as well as residential apartments. For Lot 1, the owners sought a dimensional variance from front yard, rear yard, and corner set-back requirements and from off street parking requirements. For Lot 2, the owners sought relief from parking aisle width, entrance and exit, and landscaping requirements.
At an advertised hearing on September 29, 1999, the Board heard expert testimony from several witnesses. Ms. Kathleen Bartels, an architect, gave testimony concerning the demolition of the existing building on Lot 1 and the design of the new building. Zoning Board of Review Resolution No. 8333 at page 2 ("Resolution 8333"). Mr. Robert Brown, a traffic engineer, testified that the corner setback dimensional relief requested by the owners would not negatively impact traffic in the area. He also testified that the proposed six parking spaces for the project were sufficient and that the amount of new traffic generated by the project would be "negligible or miniscule [sic]." Resolution 8333 at page 2. Mr. James Sloan, a real estate expert, testified that the proposed project would upgrade the property in question and that it would not cause a diminution in the value of the surrounding properties. Resolution 8333 at page 2. Mr. Sloan also testified that Lot 2 cannot be developed easily and that he "could not envision" the creation of a parking lot causing a diminution in value for the surrounding properties. Resolution 8333 at page 3. Concerning Lot 2, the Board heard the expert testimony of Sarah Bradford, a landscape architect, who testified that relief from the landscaping requirements would not affect abutting properties because Lot 2 is surrounded on three sides by blank walls.
The Board also heard testimony from the appellants, Andrew Mitrelis and Grant Dulgarian. Andrew Mitrelis, a restaurant owner in the area, testified that the proposed restaurant would be too large. Grant Dulgarian, in his capacity as Trustee of the Krikor S. Dulgarian Trust of December 22, 1960 that owns property nearby, testified that both Lot 1 and Lot 2 have had previous variances and that the vehicular traffic on Thayer Street is congested.
On November 16, 1999, the Board issued its decision, in the form of two resolutions: Resolution No. 8333 granted the owners' requested use, parking and dimensional variances on Lot 1, and Resolution No. 8334 granted the requested dimensional variance for Lot 2 ("Decision"). In its Decision, the Board found that the owners clearly established by the weight of the expert testimony that the proposed use of Lots 1 and 2 would upgrade the surrounding area. Resolution No. 8333 at page 3; and Resolution No. 8334 at page 2. The Board further concluded that the owners had met their burden of proof for the granting of a special use permit on Lot 1 and relief from the dimensional and parking regulations of the Ordinance on Lots 1 and 2. Resolution No. 8333 at page 4; and Resolution No. 8334 at page 2.
On December 1, 1999, the Dulgarian Trust timely filed an appeal of the Decision (C.A. No. 99-6115). On December 3, 1999, Andrew and Diane Mitrelis and PVA Realty Trust timely appealed the Decision (C.A. No. 99-6160). These appeals were consolidated for decision by this Court, by order entered on April 25, 2000. Before this Court, the appellants argued that the owners did not meet their burden of demonstrating a sufficient amount of hardship to justify the granting of a dimensional and parking variance as to Lot 1. The appellants also argued that a special use permit and a dimensional variance cannot be granted in the same petition. As for Lot 2, the appellants objected only to the fact that the Board granted the owners a variance from the landscaping requirements.
During the pendency of the appeals to this Court, however, the owners reassessed their plans and calculated that the proposed restaurant space was less than 2,500 feet and thus would no longer require the special use permit for Lot 1. Over appellants' objections, this Court considered the new evidence, even though it was not part of the original record, to maximize judicial economy. Relying partially on the holding in Viti v. Zoning Board of Review of City of Providence, 92 R.I. 59, 166 A.2d 211
(1960), which initially set the standard for the demonstration of hardship in dimensional variance cases, this Court denied appellants' appeals and affirmed the Decision of the Board.
On July 28, 2000, appellant Dulgarian petitioned the Supreme Court for a writ of certiorari. Dulgarian raised four arguments challenging this Court's decision. These assignments of error included accepting new evidence at the Superior Court level regarding the recalculation of the square footage of the proposed building on Lot 1, general misapplication of the law, overlooking [or] misconstruing material evidence, and the granting of "more than the least relief necessary."
During the pendency of Dulgarian's petition, the Supreme Court effectively overruled Viti in Sciacca, et al. v. Caruso, et al., No. 99-441-M.P. (R.I., filed April 2, 2001). On the same day that the Supreme Court decided Sciacca, it also granted Dulgarian's petition in the present case, vacated the decision of this Court, and remanded the matter to this Court with the specific direction that this case be further considered in light of the Sciacca opinion.
On remand from the Supreme Court, appellant Dulgarian here argues that this Court should reverse the Board's decision. He contends that the owners should be "required to do whatever is necessary to comply with the provisions of the zoning ordinance. . . ." Specifically, Dulgarian insists on strict compliance with Rhode Island General Laws §§ 45-24-41 (c) and (d) as to parking and suggests several possible remedies to fix the "violating structure," namely, requiring the owners to demolish the offending building, requiring the owners to purchase an adjacent property and construct a parking lot thereon, or requiring the owners to evict the residential tenants residing on the property or to reduce the size or the number of seats in the restaurant operated on Lot 1. In his memorandum submitted to this Court following the remand, Dulgarian appears to challenge neither this Court's acceptance of additional evidence regarding the need for a use variance nor this Court's decision regarding the relief granted for Lot 2. It is the issue of parking connected with the Board's granting of dimensional variances that Dulgarian protests most vehemently.
The owners counter that the evidence in the record is sufficient for this Court, on remand, to again affirm the Board's decision. Further, the owners point to the fact that the Supreme Court's order did not reverse the Board's Decision, but merely remanded this case for reconsideration by this Court. Therefore, the owners assert that the Supreme Court found that the owners met the requirements of § 45-24-41. The owners now assert that should this Court interpret the Supreme Court's remand order as suggesting a further remand to the Board, that remand should be limited to the Newton issue (i.e., the Board's earlier improper grant of a use variance and a dimensional variance in the same application). According to the owners, the Supreme Court's remand requires, at most, either a partial reversal of the Board's decision to grant the use variance or a further remand to the Board for a new decision denying the request for a use variance.
 Standard of Review
The standard of review for this Court's appellate consideration of the Board's Decision is outlined in R.I. Gen. Laws § 45-24-69(d), which states:
 "(d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, this Court must examine the entire certified record to determine whether substantial evidence exists to support the findings of the board. Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board is to weigh evidence, with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of a zoning board and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 Applications for Dimensional Relief
Both our state statute and the Providence Zoning Ordinance define a dimensional variance as:
 "Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
R.I. Gen. Laws 1956 § 45-24-31(61)(ii), as amended by P.L. 1999, ch. 83, § 128, eff. June 23, 1999 and P.L. 1999, ch. 130, § 128, eff. June 28, 1999; Providence Zoning Ordinance § 1000.140(b). Relief from parking space requirements is considered dimensional relief. See Newton v. Zoning Board of Warwick, 713 A.2d 239, 242 (R.I. 1998). Both the Ordinance and the state statute also contain nearly identical language for establishing the conditions for the granting of dimensional relief. The Ordinance provides:
 "(c) In granting a variance, the Board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan; and
 4) That the relief to be granted is the least relief necessary."
 "(d) The Board shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 . . .
 2) In granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
R.I. Gen. Laws 1956 § 45-24-41(c), (d); Providence Zoning Ordinance § 902.3.
In Viti, our Supreme Court held that in order for an applicant to obtain this type of dimensional relief, a landowner "need only demonstrate an adverse impact amounting to more than a mere inconvenience." See Gara Realty, Inc. v. Zoning Board of Review of South Kingstown, 523 A.2d 855, 858 (R.I. 1987); and Viti, 92 R.I. 59, 65,166 A.2d 211, 214. The Viti decision, however, predated the General Assembly's comprehensive amendments to the Rhode Island zoning laws enacted in 1991. See Sciacca, 769 A.2d 578, 582; R.I. Gen. Laws 1956 § 45-24-19(c) (repealed). Through the passage of the new 1991 Zoning Enabling Act, P.L. 1991, ch. 307, § 1 (1991 amendment), the Legislature successfully superseded the burden of proof set by the Supreme Court in Viti and made the acquisition of a dimensional variance much more difficult for applicants. See R.I. Gen. Laws §§ 45-24-27 to45-24-72; Sciacca, id. According to the new, more specific definition of "mere inconvenience," an applicant now must show that "there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." See G.L. § 45-24-41(d); Sciacca, id. This definition suggests that if a property owner can enjoy a single, legally permitted beneficial use of the property without the proposed variance, as a reasonable alternative to doing so with the proposed variance, then the application for a dimensional variance should be denied. See Sciacca, id. (note 6) (emphasis added).
Further, the Sciacca opinion stresses two mandatory zoning board regulations which enjoy continued vitality under the 1991 Zoning Enabling Act, despite the abandonment of the Viti standard. First, a variance still may not be granted to the owner of a substandard lot where such lot was created by deliberate conduct of the applicant. Id. at 583; Rozes v. Smith, 120 R.I. 515, 521, 388 A.2d 816, 820 (1978). The language of § 45-24-41(c)(2) itself instructs zoning boards and reviewing courts that the grant of a requested zoning variance is improper when, among other reasons, the alleged hardship results from "any prior action of the applicant." Id. (emphasis added). Second, the Sciacca opinion cautions zoning boards and their attorneys to make certain that "zoning-board decisions on variance applications . . . address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief. . . ." Sciacca, id. at 785 (emphasis added). Such specification of evidence in the decisions greatly aids the Superior Court, and, if necessary, the Supreme Court in undertaking any requested review. Id.
In Sciacca, the Supreme Court considered a zoning case involving the propriety of granting a dimensional variance for an undersized lot so that the property owner could build a single-family house thereon. Before seeking the variance, the property owner subdivided previously merged lots in order to build another house on the newly created undersized lot, necessitating variance relief. The property owner applied for a variance. Ultimately, the zoning board granted the variance without giving any reasons. On appeal to the Superior Court, the trial justice reasoned that the property owner had met this threshold burden of demonstrating more than a "mere inconvenience," as interpreted by Viti. The Supreme Court reversed the Superior Court, ruling that the property owner had created the very hardship that formed the basis for the property owner's variance request and that the Superior Court had erroneously applied the old standard pertaining to the review of the board's approval of a dimensional variance. Moreover, the Supreme Court specifically noted the deficiencies in the zoning board record that prevented effective review of the board's decision. See id.
The present case bears some resemblance to Sciacca. Here, the owners need a dimensional variance for relief from the on-site parking requirements on Lot 1. Like the property owner in Sciacca, according to Dulgarian, the owners here also had received previous variances on the property. Of course, as in Sciacca, if any of these previous variances or any deliberate act of these owners caused the hardship from which they now seek relief, the Board must deny the variance. The Board's Decision at issue, however, is silent on this question. Moreover, like the decision in Sciacca, the Decision here is also silent as to whether the owners had any other reasonable alternative to enjoy a legally permitted beneficial use of their property. Because the Board in this case also rendered its Decision under the old Viti standard, the Board's Decision could not conform to the new more exacting interpretation of the phrase "more than a mere inconvenience" as elucidated in the Supreme Court's decision in Sciacca.
The owners in the present case argue that the Board's hearing record satisfies § 45-24-41(c), establishing sufficient evidence that the owners met their burden of proof. The Supreme Court's decision in Sciacca, however, mandates that a zoning board must conform its findings of fact in its decision to each and every requirement of the law. In its Decision here, the Board failed to address whether the owners had any other reasonable alternative to enjoy a legally permitted beneficial use of their property and whether the evidence in the record satisfied each of the legal preconditions for granting relief under § 45-24-41(c). See also von Bernuth v. Zoning Bd. of Review of Town of New Shoreham,770 A.2d 396, 401 (R.I. 2001) (where the Supreme Court stated: "This Court has long held that a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review. . . . When the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances."). In particular, despite testimony that the owners had been granted previous variances, there was no mention of that fact in the Board's Decision.
On review of a board decision, the Superior Court does not consider the credibility of witnesses, weigh evidence, or make its own findings of fact. See Monroe v. Town of East Greenwich, 733 A.2d 703 (R.I. 1999). Rather, its review is confined to a search of the record to ascertain whether the board's decision rests upon competent evidence or is affected by error of law. See id. at 705. Because this Court must constrain its review, this Court must remand this matter to the Board for it to conform its Decision, including its findings of facts and conclusions of law, to the standards as expressed in Sciacca. In particular, the new decision must include: (1) an assessment of whether the applicant has shown that there is no other reasonable alternative to enjoy a legally permitted beneficial use of this property according to §§ 45-24-41(d) and45-24-31(61)(b) of the 1991 Zoning Enabling Act (such that the hardship that it would suffer were a dimensional variance not granted would amount to more than a mere inconvenience); and (2) findings of fact and conclusions of law with respect to each of the elements listed in §45-24-41(c). Specifically, the Decision must reflect specific findings of fact and conclusions of law as to the following: (1) whether the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure as opposed to the general characteristics of the surrounding area or a physical or economic disability of the applicant; (2) whether the hardship is the result of any prior action of the applicant; (3) whether the hardship results primarily from the desire of the applicant to realize greater financial gain; (4) whether the granting of the requested variance will alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan; and (5) whether the relief sought is the least relief necessary. See § 45-24-41(c).
Moreover, on remand, the Board may reopen the case for further proceedings. By statute, this Court has the authority to remand a case to the zoning board of review for further proceedings. R.I. Gen. Laws §45-24-69(d). The purpose of this authority is not to allow remonstrants another opportunity to present a case when the evidence presented initially is inadequate. See Roger Williams College v. Gallison,572 A.2d 61 (R.I. 1990). Instead, the act of remanding a case for further proceedings is appropriate when there was either a genuine defect in the proceedings in the first instance, which defect was not the fault of the parties seeking the remand, or when there is no record of the proceedings upon which a reviewing court may act. See id. at 63. This Court's remand results from a clarification of the law and the need for more specific factual findings and not the fault of any party. Indeed, at the prior zoning hearing, all parties and the Board proceeded upon a misconception of the applicable law and without the benefit of the Supreme Court's decision in Sciacca. On remand, therefore, the Board should allow the parties the opportunity, if requested, to present additional evidence and arguments to address the more demanding standards set forth in Sciacca.[2] The Board shall give appropriate notice of any such proceedings as required by statute. See R.I. Gen. Laws 1956 § 45-24-41.
 Conclusion
After review of the entire record, this Court finds that in contravention of the Supreme Court's opinion in Sciacca, the Board failed to determine whether the owners had any other reasonable alternatives to enjoy a legally permitted use of the property (absent a grant of the requested variance relief), to address whether the owners themselves created the hardship from which they now seek dimensional relief, and to make specific findings of fact and the conclusions of law regarding all of the statutory elements necessary to obtain a dimensional variance. These shortcomings in the Board's Decision constitute errors of law requiring a remand. Accordingly, this Court vacates the November 1, 1999 Decision of the Zoning Board of Review of the City of Providence and remands these cases to the Board for reconsideration in light of Sciacca and a determination of the issues associated with the appellants' requests for dimensional variances discussed herein. On remand, the Board is further instructed to deny and dismiss the application for a special use permit. This Court shall retain jurisdiction of any subsequent appeals arising out of these contested cases.
All counsel shall confer and agree upon an appropriate form of order and judgment, reflective of this decision, and submit it to the Court forthwith for entry.
[1] Lot 1 is designated as Assessor's Plat 13, Lot 46. Lot 2 is designated as Assessor's Plat 10, Lot 298. Lot 2 is the parking area.
[2] Based on this Court's earlier decision and this remand to the Board, this Court finds that any further issue regarding the Board's earlier grant of a special use permit is moot. The Board is instructed, on remand, to deny and dismiss the application for a special use permit as the parties agree that no such permit is needed for the existing restaurant because its square footage is under 2,500 square feet. The Board should confine itself on remand to a consideration of the applications for dimensional variances as to Lots 1 and 2 (assuming appellants continue to contest issuance of variances as to both lots), with emphasis on the contested issues of parking.