DECISION
Before the Court is an appeal from a decision of the Zoning Board of Review of the City of Cranston ("the Board") that granted Anna and John Iafrati ("the Iafratis") relief from various zoning requirements contained in the Cranston City Code (the "Code").[1] John and Nicholas DiRaimo ("the DiRaimos") seek reversal of the Board's Decision of January 12, 2000 ("the Decision") that granted the Iafratis' application. For the reasons set forth in this decision, this Court remands this case to the Board for reconsideration in light of the Rhode Island Supreme Court's decision in Sciacca v. Caruso, 769 A.2d 578 (R.I. 2001) and this decision.
 Facts and Travel
On November 23, 1999, the Iafratis filed an application with the Board for a variance on property that they owned located at 653-655 Atwood Avenue in Cranston (the "Property").[2] The Iafratis sought to ratify the continued operations of their tenant, the Providence Club for the Deaf, that had already been operating on the Property for five years at the time of the Iafratis' application. In their application, the Iafratis requested relief from three provisions set forth in the Cranston Code: the "Schedule of Intensity" (Section 30-17); "Schedule of Uses" (Section 30-8); and the "Off Street Parking" requirement (Section 30-18(p)). The Property is zoned C-5. The Property has a total area of 2,606 square feet, and thus falls well short of the 10,000 square foot minimum lot size requirement for a C-5 zone. See Cranston Code § 30-17.[3]
There is a two story building located on the Property, with one story located on a lower level that is even in height with Paul Street and a second story occupying the upper level that is even with Atwood Avenue. This building has a structural imprint of 2,200 feet that constitutes approximately 85% coverage of the lot that is more than the 60% maximum allowed by the Code. See id. Among other things, the Code lists "Lodge, private club, fraternal org." as a permitted use in a C-5 zone. See Cranston Code § 30-8.
The Property itself has an odd triangular shape, with boundary lines formed on all three sides by public streets. Moreover, the Property has only one off-street parking space. Two commercial units have occupied the upper, Atwood Avenue, level of the building located on the Property since the 1960's. In April and May 1985, respectively, the Board granted variances for the operation of a health food store and a flower shop on this upper level. Subsequently, in 1988, the Board granted a variance for a beauty salon on the upper level that still operates there today. The beauty salon operates approximately from 8:00 a.m. to 6:00 p.m., four days a week, and attracts as many as 12 cars at any one time. (Cranston Zoning Board of Review Hearing Transcript at 8.) The florist has since left. The record does not indicate the size of the beauty salon. All parties agree that the continued commercial enterprises located on the second floor of the Property constitute a legal nonconforming use.
The Iafratis purchased the Property in 1994. According to John Iafrati, not only were the two upper-level units occupied before the purchase, but also the lower level had been occupied by a jewelry shop.[4]
(Transcript at 6.) At the time of the Iafratis' purchase, however, the lower level was vacant. Sometime shortly after their purchase, the Iafratis leased the lower level to the Providence Club for the Deaf ("the Club") that has continuously operated a non-profit "social club" for deaf persons on the Property ever since. The Club holds meetings on Fridays, every third Wednesday, and occasionally on Saturdays and Sundays. Generally, the hours of operation are from 6:00 p.m. to 1:00 a.m. Although the Club sometimes draws as many as 60 people for its monthly bingo game, the average crowd generally ranges between 10 and 25 people.
On January 4, 2000, the Cranston Planning Commission voted unanimously to recommend denial of the Iafratis' application for a variance. The Planning Commission concluded that the application was deficient, finding:
 "1) Over-intensive use of property with no provision for long term off street parking.
 2) No hardship. The applicant is making reasonable use of the property with two commercial units on a severely undersized lot."
After issuing the proper notice, the Board held a public hearing on January 12, 2000. There, the Board heard testimony from four witnesses. John Iafrati testified on his own behalf, stating that he had never received any complaints from anyone regarding the Property. (Transcript at 8.) He further testified that only the beauty salon remained as a tenant in the upper unit. This beauty salon attracted up to 12 cars at a time, all of which parked on the street.[5] In his testimony, Iafrati also provided a general description of the subject lower unit that included among its 1,800 square feet a kitchen, an office, two bathrooms, some open space, and a storage area.
Through an interpreter for the hearing impaired, Diane Horan testified for the Club in her capacity as a member. After summarizing the Club's activities and the crowds that they attracted, Horan testified that the Club had occupied the premises for five years without receiving any complaints about parking.
J. Clifden O'Reilly, Jr. provided expert testimony in support of the Iafratis' application. According to the Board's Chairman, Michael Doran, O'Reilly had appeared before the Board as an expert "at least 500 times." (Id. at 12.) After explaining the basis of his testimony, O'Reilly concluded that in his opinion, because the Club had been in existence for five years without a complaint, the Club was a use compatible with the surrounding neighborhood. Moreover, in O'Reilly's opinion, denial of the zoning relief would cause an "extreme hardship." (Id. at 16.)
The Board also heard testimony from William J. McGovern, a real estate expert engaged by the DiRaimos, who testified at length in opposition to the application.[6] Chairman Doran also recognized McGovern's many past appearances as an expert witness before the Board. As background, McGovern testified to the methodology that he used to assess the application, including analysis of four separate factors that he considered in his evaluation: neighborhood, site, zoning, and highest and best use. McGovern then offered a number of opinions based on these factors. First, McGovern explained that pursuant to the definition of "hardship" provided in the Code, the Iafratis failed to set forth evidence necessary and sufficient to establish their right to relief.[7] Second, McGovern opined that the application would have an adverse effect on the surrounding and abutting property owners and the general character of the neighborhood because the intensive use generated by the Club would increase the volume of cars, thereby creating parking problems. Also, as McGovern noted, the application does not contain express limitations on the activities of the Club that could result in exacerbated parking problems in the future. Third, McGovern stated that denial of the application would not amount to "more than a mere inconvenience" for the Iafratis because the site was already 40% larger than that which would be allowed today. Thus, the use of the site was already "overmaximized." Id. at 30. Fourth, the information regarding the parking required by the Club was insufficient because there was no evidence as to the number of seats in the club — the number that forms the basis of the parking requirement. Regardless, the premises maintained only one off-street parking space, and that space cannot be used to park because it is occupied by a trash removal container. Id. at 31. Finally, McGovern concluded that the application was not in conformity with the City's Comprehensive Plan because the Club represented a commercial encroachment by a substantially nonconforming use into a residential neighborhood. Id. The Board admitted as evidence McGovern's expert report that detailed all of these conclusions. See Objector's Exhibit B.
The Board also allowed two additional documents in opposition to the application to be read into the record: the Planning Commission's aforementioned recommendation of denial of the application and a letter from William A. Capuano, an "adjacent" land owner. In his letter, Capuano explained his concerns regarding the potential for Club patrons to park on his nearby undeveloped property.
Later in the same proceeding, the Board unanimously approved the Iafratis' application and granted the requested intensity, use, and parking variances. The Decision, in its entirety, reads as follows:
 "Based on the findings of fact and the evidence presented, the private club, with full kitchen facilities, has operated from the lower level for approximately five years, in addition to the two retail units on the first floor.[8] The triangular shaped building is surrounded by City streets on all sides and is 7394 sf short of the required 10,000 sf minimum lot size for a C-5 zone. The building has operated with commercial uses since 1960, with only one on site parking space."
(See Minutes of the Cranston Zoning Board (January 12, 2000) at 3.)
On February 2, 2000, the DiRaimos timely filed the instant appeal from the Board's Decision. Before this Court, the DiRaimos argue that the Iafratis did not meet their burden of demonstrating compliance with the standards set forth in the Code for granting variances. (See Section 30-28.) The DiRaimos also argue that the Board's Decision, as rendered, is inadequate under state law. See R.I. Gen. Laws 1956 § 45-23-70(a). The Iafratis counter that the evidence in the record is sufficient for this Court to affirm the Board's Decision. The Board supports that argument and has joined in the memorandum filed by the Iafratis.
 Standard of Review
This Court has jurisdiction of this appeal pursuant to R.I. Gen. Laws § 45-24-69. The standard of review for this Court's appellate consideration of the Board's Decision is outlined in R.I. Gen. Laws § 45-24-69(d), which states:
 "(d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, this Court must examine the entire certified record to determine whether substantial evidence exists to support the findings of the board. Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board is to weigh evidence, with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of a zoning board and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 Dimensional Relief Both our state statute and the Cranston Code define a dimensional variance as:
 "Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
R.I. Gen. Laws 1956 § 45-24-31(61)(ii); Cranston Code § 30-3.
Both the Code and the state statute also contain nearly identical language for establishing additional conditions for the granting of dimensional relief. The Code provides:
 "(b) In granting a variance, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."
 "(c) The zoning board of review shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 . . . .
 (2) In granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more valuable after the relief is granted shall not be grounds for relief."
Cranston Code § 30-28; see also R.I. Gen. Laws 1956 §45-24-41(c), (d).
Relief from parking space requirements can be considered dimensional relief. See Newton v. Zoning Board of Warwick, 713 A.2d 239, 242 (R.I. 1998). The Cranston Code states:
 "(p) Off-street parking.
 (1) Applicability. No land shall be used or occupied and no structure shall be erected or used unless the off-street parking spaces required herein are provided. Such parking spaces are not required for any structure or use existing at the time of enactment of this chapter; provided, however, that parking spaces as specified in this chapter shall be provided for any enlargement or alteration to any such existing structures or use.
 . . . .
 (3) Extension of parking across district boundaries in residential, commercial and industrial districts. It is the intent of the zoning ordinance to encourage proper off-street parking areas so as to protect public safety, alleviate traffic congestion and encourage economic development that is in harmony with surrounding land use."
Cranston Code § 30-18(p), passed and approved on June 25, 1973. See Ordinance No. 73-42. In the present case, the Iafratis requested both "use" and "dimensional" relief in the same application. Before this Court, however, both parties have proceeded under the assumption that relief from this parking ordinance, which appears to be the sole disputed issue, should be treated as an application for a dimensional variance. Absent an argument to the contrary, this Court will treat the application as one exclusively for dimensional relief.[9]
In Viti v. Zoning Bd. of Review of City of Providence, our Supreme Court held that in order for an applicant to obtain dimensional relief, a landowner "need only demonstrate an adverse impact amounting to more than a mere inconvenience." 92 R.I. 59, 166 A.2d 211 (1960), see also Gara Realty, Inc. v. Zoning Board of Review of South Kingstown, 523 A.2d 855, 858 (R.I. 1987). For nearly forty years, the Viti decision provided the appropriate standard for the courts of this state to apply when considering zoning appeals. The Viti decision, however, predated the General Assembly's comprehensive amendments to the Rhode Island zoning laws enacted in 1991. See Sciacca v. Caruso, 769 A.2d 578, 582 (2001); R.I. Gen. Laws 1956 § 45-24-19(c) (repealed). In Sciacca, the Rhode Island Supreme Court held that through the passage of the new 1991 Zoning Enabling Act, P.L. 1991, ch. 307, § 1 (1991 amendment), the Legislature successfully superseded the burden of proof set by the Supreme Court in Viti and made the acquisition of a dimensional variance much more difficult for applicants. See Sciacca, id., R.I. Gen. Laws §§ 45-24-27 to 45-24-72. According to the new, more specific definition of "mere inconvenience," an applicant now must show that "there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." See G.L. § 45-24-41(d); Sciacca, id. This definition suggests that if a property owner can enjoy a single, legally permitted beneficial use of the property without the proposed variance, as a reasonable alternative to doing so with the proposed variance, then the application for a dimensional variance should be denied. See Sciacca, id. (note 6) (emphasis added).
Further, the Sciacca opinion stresses two mandatory zoning board regulations which enjoy continued vitality under the 1991 Zoning Enabling Act, despite the abandonment of the Viti standard. First, a variance still may not be granted to the owner of a substandard lot where such lot was created by deliberate conduct of the applicant. Id. at 583; Rozes v. Smith, 120 R.I. 515, 521, 388 A.2d 816, 820 (1978). The language of § 45-24-41(c)(2) itself instructs zoning boards and reviewing courts that the grant of a requested zoning variance is improper when, among other reasons, the alleged hardship results from "any prior action of the applicant." Id. (emphasis added). Second, the Sciacca opinion cautions zoning boards and their attorneys to make certain that "zoning-board decisions on variance applications . . . address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief. . . ." Sciacca, id. at 785 (emphasis added). Such specification of evidence in the decisions greatly aids the Superior Court, and, if necessary, the Supreme Court in undertaking any requested review. Id.
In Sciacca, the Supreme Court considered a zoning case involving the propriety of granting a dimensional variance for an undersized lot so that the property owner could build a single-family house on the Property. Before seeking the variance, the property owner subdivided previously merged lots in order to build another house on the newly created undersized lot, necessitating variance relief. The property owner applied for a variance. Ultimately, the zoning board granted the variance without giving any reasons. On appeal to the Superior Court, the trial justice reasoned that the property owner had met this threshold burden of demonstrating more than a "mere inconvenience," as interpreted by Viti. The Supreme Court reversed the Superior Court, ruling that the property owner had created the very hardship that formed the basis for the property owner's variance request and that the Superior Court had erroneously applied the old standard pertaining to the review of the board's approval of a dimensional variance. Moreover, the Supreme Court specifically noted the deficiencies in the zoning board record that prevented effective review of the board's decision. See id.
The present case bears some resemblance to Sciacca. As in Sciacca, even a cursory reading of the Board's Decision in the present case reveals that the Board here also rendered its Decision under the old Viti standard. The Iafratis' memorandum, which was joined in by the Board, evidenced this fact by extensively citing to Viti in support of their arguments. Moreover, like the decision in Sciacca, the Decision here is also silent as to whether the Iafratis had any other reasonable alternative to enjoy a legally permitted beneficial use of their Property. As in Sciacca, therefore, the Board's Decision cannot conform to the new more exacting interpretation of the phrase "more than a mere inconvenience" as elucidated in the Supreme Court's decision in Sciacca.
Also, like the property owner in Sciacca, the Iafratis required a dimensional variance for relief from the Code's on-site parking requirements. Here, according to the record, the Property enjoyed the benefit of variances obtained by previous owners. What is absent from the record, however, is whether the Iafratis shared any interest with previous owners, and thus, whether any of the relief heretofore granted by the Board can be imputed to the Iafratis, thereby disqualifying their current application. Of course, as in Sciacca, if any of these previous variances or any deliberate act of these owners caused the hardship from which they now seek relief, the Board must deny the variance.
The owners in the present case argue that the Board's hearing record satisfies Code § 30-28 and R.I. Gen. Laws § 45-24-41(c), establishing sufficient evidence that the owners met their burden of proof. The Supreme Court's decision in Sciacca, however, mandates that a zoning board must conform its findings of fact in its decision to each and every requirement of the law. In its Decision here, the Board failed to address whether the owners had any other reasonable alternative to enjoy a legally permitted beneficial use of the Property and whether the evidence in the record satisfied each of the legal preconditions for granting relief under R.I. Gen. Laws § 45-24-41(c). See also von Bernuth v. Zoning Bd. of Review of Town of New Shoreham, 770 A.2d 396, 401 (R.I. 2001) (wherein the Supreme Court stated: "This Court has long held that a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review. . . . When the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances."). In particular, despite testimony that the land enjoyed the benefit of variances previously granted, there was no mention of that fact in the Board's Decision.
On review of a board's decision, the Superior Court does not consider the credibility of witnesses, weigh evidence, or make its own findings of fact. See Monroe v. Town of East Greenwich, 733 A.2d 703 (R.I. 1999). Rather, its review is confined to a search of the record to ascertain whether a board's decision rests upon competent evidence or is affected by error of law. See id. at 705. Given this Court's constrained review, it must remand this matter to the Board for it to conform its Decision, including its findings of facts and conclusions of law, to the standards as expressed in Sciacca. See Dulgarian v. Zoning Bd. of Review, C.A. No. 99-6115, consolidated with Mitrelis and PVA Realty Trust v. Zoning Bd. of Review, C.A. No. 99-6160, 2001 R.I. Super. LEXIS 118, November 13, 2001, Savage, J. (remanded to zoning board with instructions to conform its decision in light of Sciacca). In particular, the new decision must include: (1) an assessment of whether the applicant has shown that there is no other reasonable alternative to enjoy a legally permitted beneficial use of the Property according to R.I. Gen. Laws §§45-24-41(d) and 45-24-31(61)(b) of the 1991 Zoning Enabling Act (such that the hardship that it would suffer were a dimensional variance not granted would amount to more than a mere inconvenience); and (2) findings of fact and conclusions of law with respect to each of the elements listed in R.I. Gen. Laws § 45-24-41(c). Specifically, the new decision must reflect specific findings of fact and conclusions of law as to the following: (1) whether the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure as opposed to the general characteristics of the surrounding area or a physical or economic disability of the applicant; (2) whether the hardship is the result of any prior action of the applicant; (3) whether the hardship results primarily from the desire of the applicant to realize greater financial gain; (4) whether the granting of the requested variance will alter the general character of the surrounding area or impair the intent or purpose of the Zoning Ordinance or the Comprehensive Plan; and (5) whether the relief sought is the least relief necessary. See R.I. Gen. Laws § 45-24-41(c).
Moreover, on remand, the Board may reopen the record for further proceedings. By statute, this Court has the authority to remand a case to the zoning board of review for further proceedings. R.I. Gen. Laws §45-24-69(d). The purpose of this authority is not to allow remonstrants another opportunity to present a case when the evidence presented initially is inadequate. See Roger Williams College v. Gallison,572 A.2d 61 (R.I. 1990). Instead, the act of remanding a case for further proceedings is appropriate when there was either a genuine defect in the proceedings in the first instance that was not the fault of the parties seeking the remand or when there is no record of the proceedings upon which a reviewing court may act. See id. at 63. This Court's remand asks the Board to both reconsider its Decision in light of intervening Supreme Court precedent and to make more specific factual findings. These deficiencies do not result from the fault of any party. Indeed, at the prior zoning hearing, all parties and the Board proceeded upon a misconception of the applicable law and without the benefit of the Supreme Court's decision in Sciacca. On remand, therefore, the Board should allow the parties the opportunity, if requested, to present additional evidence and arguments to address the more demanding standards set forth in Sciacca. The Board shall give appropriate notice of any such proceedings as required by statute. See R.I. Gen. Laws 1956 § 45-24-41.
 Conclusion
After review of the entire record, this Court finds that in contravention of the Supreme Court's opinion in Sciacca, the Board failed to: (1) determine whether the Iafratis had any other reasonable alternatives to enjoy a legally permitted use of the Property (absent a grant of their requested variance relief); (2) address whether the owners themselves created the hardship from which they now seek dimensional relief; and (3) make specific findings of fact and conclusions of law regarding all of the statutory elements necessary to obtain a dimensional variance. These omissions in the Board's Decision constitute errors of law warranting a remand. Accordingly, this Court vacates the January 12, 2000 Decision of the Zoning Board of Review of the City of Cranston, remands this case to the Board for reconsideration in light of Sciacca and this decision, and directs the Board to determine the issues associated with the Iafratis' request for a dimensional variance that are discussed herein. This Court shall retain jurisdiction of any subsequent appeal arising out of this matter.
All counsel shall confer and agree upon an appropriate form of order and judgment, reflective of this decision, and submit it to the Court forthwith for entry.
[1] Passed and approved on June 25, 1973. See Ordinance No. 73-42.
[2] The Property also has an alternative address of 9 Paul Street. The Property is further described by the Iafratis in their application as Assessor's Plat 12-2, Lot 825.
[3] Section 30-17, the "Schedule of Intensity," is a table that sets forth the applicable minimum lot and building requirements for each designated zoning area within the City. In a C-5 zone, Section 30-17 requires: a minimum lot area of 10,000 square feet; minimum lot width and frontage of 80 feet; minimum front, back, and side setbacks of 30 feet, 20 feet, and 8 feet, respectively; maximum lot coverage of 60 percent; and a maximum building height of 35 feet.
[4] No other evidence in the record supports this claim nor is there any evidence of the prior granting of a variance with respect to any commercial or business operations on the lower level.
[5] The record does not indicate whether the patrons of the beauty salon parked on Atwood Avenue, Paul Street, or Tabor Street.
[6] In his testimony, McGovern stressed that as a general certified appraiser, he was compelled to adhere to the uniform standards of professional appraisal practice that required him to perform a neutral evaluation of the Property. Thus, although he admitted that the DiRaimos were his clients, McGovern denied that he was an "advocate" on their behalf.
[7] Ergo, according to McGovern, the hardship is not due to the unique characteristics of the building or the land, the general character of the area, or any physical or economic disability of the applicant. Instead, in McGovern's opinion, the hardship was caused by the Iafratis' 1994 purchase of the Property with knowledge of the zoning restrictions. He viewed their application as impermissibly motivated by their desire to realize greater financial gain. (See id. at 28.)
[8] This Court assumes, using the description of the "first floor" and the pictures provided in McGovern's report, that the Board means the upper, Atwood Avenue, level in this context.
[9] The record does not explain why the Iafratis sought relief from the "Schedule of Uses," Cranston Code § 30-8, which lists a social club as a permitted use in a C-5 zone. Both the Planning Commission and the Zoning Board noted that the Iafratis sought to "operate a private club in an existing legal non-conforming building on an undersized lot" and treated the application as one for dimensional relief. No party disputes the conclusion that a social club is a permitted use. It appears that the parties agree, therefore, that no special use permit or use variance is required in connection with the Iafratis's application. Accordingly, this appeal does not raise any of the issues connected with the Rhode Island Supreme Court's decision in Newton v. Zoning Board of Review of City of Warwick, 713 A.2d 239 (R.I. 1998).