[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The question before the Court is whether a city planning board may properly deny an application to create a subdivision that would render abutting properties dimensionally nonconforming. RK Building Corporation ("RK" or "appellant") appeals a decision of the City of Woonsocket Zoning Board of Review ("Zoning Board"), acting in its capacity as the Planning Board of Appeal for the City of Woonsocket, upholding the Woonsocket Planning Board's ("Planning Board") denial of its application. The defendants urge the Court to affirm the Zoning Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-23-71.
 FACTS AND TRAVEL
RK owns a parcel of property near Mendon Road in the City of Woonsocket, designated as Assessor's Plat 53, Lot 32. The subject property is landlocked except for a forty foot wide right-of-way that extends to Mendon Road, which was expressly granted to RK's predecessor in interest in a deed dated July 13, 1962. Between the subject parcel and Mendon Road, and abutting each side of the right-of-way, are two independently owned parcels, designated as Assessor's Plat 53, Lots 13 and 16. The edges of the right-of-way thus form one side lot line of each of Lots 13 and 16. At the time the subject property was conveyed by the 1962 deed, there were no structures on Lot 13 or Lot 16, which are located in an R-2 Low Density Single-Family Residential District. Pursuant to setback requirements in an R-2 district, homes built on Lots 13 and 16 are required to have a minimum setback of ten feet from the side lot lines. Woonsocket, R.I. Rev. Ordinances app. B, § 7.3-5.2 (2002). In 1965, homes were built on Lots 13 and 16. While the home on Lot 16 was built in compliance with the side setback requirement, the home on Lot 13 was built just eight feet from the side lot line abutting RK's right-of-way, and is thus dimensionally nonconforming as it stands.
The present controversy arose because the appellant desires to develop the subject property and create a nine lot residential subdivision. As part of this project, RK wishes to convert its forty foot wide right-of-way into a public street so that the lots on its parcel have a means of egress to Mendon Road. If the right-of-way were converted to a public street, Lots 13 and 16 would then be corner lots. As such, the side setback requirement on the side of each house facing the new street would be twenty feet — the same as a front setback. See Woonsocket, R.I. Rev. Ordinances app. B, § 7.1.1. The home on Lot 16 would thus become dimensionally nonconforming, and the nonconformity of the home on Lot 13 would be increased, through no fault of the owners of those lots. The problem came to light in the course of the first stage review of the appellant's plans.
The Development Review Act, §§ 45-23-25 et seq. sets forth the procedure to be followed in applying for approval of a new subdivision. Because RK seeks to divide its property into nine individual lots, the project qualifies as a "major subdivision" under the terms of the Act. Section45-23-32(22). The initial step in the application process is to hold one or more pre-application meetings for the purpose of allowing the applicant to meet with relevant officials and agencies to receive guidance and advice as to navigating the approval process. § 45-32-35.
Consistent with this provision, RK appeared before the Planning Board in March of 2001 for a pre-application meeting. At that time, there were no objections to RK's proposed designation of the right-of-way as a public street. Following the pre-application meeting, the appellant filed an application for approval of its subdivision master plan in accordance with § 45-23-40 in July of 2002. On September 11, 2002, the Woonsocket City Solicitor, Joseph Carroll, sent a memorandum to a member of the Planning Board advising him that the application could not be approved because construction of a street where the right-of-way was would create a dimensional nonconformity on abutting lots. At an October 1, 2002 meeting of the Planning Board, the appellant's application was tabled indefinitely by the Board, in reliance on Carroll's opinion that the Board "cannot approve a subdivision without Zoning Board approval of any necessary variances." (Minutes of Planning Bd. Mt'g 10/1/02 at 1.)
The appellant sought reconsideration of the application, which the Planning Board denied in a letter dated September 3, 2003, determining that the application could not be approved unless the owners of Lots 13 and 16 obtained the proper variances. (Letter from Keith A. Brynes, City Planner to Mr. Raymond Bourque of 9/3/03.) RK then appealed the denial to the Zoning Board of Review pursuant to § 45-23-67. Public hearings were held on January 12, 2004, and January 26, 2004, before the Zoning Board. The decision of the Zoning Board to uphold the Planning Board was issued on February 13, 2004. RK timely filed this appeal on February 13, 2004, pursuant to § 45-23-70.
The Zoning Board upheld the denial of the appellant's application by a vote of three-totwo, citing the rationale relied upon by the Planning Board, that "[t]he plan as proposed would create an abutting lot to be dimensionally non-conforming with regard to Section 7.11 of the City's Zoning Ordinance, which states that `The side yard requirements for all buildings on corner lots shall be such that principal or accessory building extends beyond the front setback line set for buildings along the street considered to be the side street of the corner lot.'" (Zoning Board of Review Public Hearing of 1/26/04 Minutes at 11.) The plaintiff timely appeals this decision on several grounds.
 STANDARD OF REVIEW
Under the Development Review Act, review of a planning board's decision is limited. A zoning board reviewing the decision of a planning board may reverse the lower body only if the zoning board finds that there was prejudicial procedural error, clear error, or a lack of support by the weight of the evidence in the record. § 45-23-70(a). When the Superior Court reviews a zoning board's decision, "the `traditional judicial review' standard that is applied in administrative-agency actions" is utilized. Therefore, the Court must not consider witness credibility, weigh the evidence, or make findings of fact. Munroe v. Town of E.Greenwich, 733 A.2d 703, 705 (R.I. 1999) (citing Kirby v. Planning Boardof Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)). The standard of review is provided by statute:
 "The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Section 45-23-71(c).
The Court's review is thus confined to a search of the record to ascertain whether the board's decision "rests upon competent evidence or is affected by an error of law." Munroe, 733 A.2d at 705 (citing Kirby,634 A.2d at 290).
 THE DENIAL OF APPELLANT'S APPLICATION
The appellant argues that the Planning Board's failure to act on the subdivision application in a timely manner resulted in the proposed subdivision being "deemed" approved, nullifying the later denial by the Planning Board and Zoning Board. RK claims that pursuant to §45-23-40(e), because the Planning Board neither approved nor denied its application within 120 days of the application being certified complete, the application was approved by operation of law.
After the pre-application meeting, RK submitted the required master plan application materials to an administrative officer for the first step of the review process. Section 45-23-40(2). The administrative officer should then have certified the application as complete or incomplete within sixty days. Section 45-23-40(3)(b). There is, however, no evidence in the record that the appellant's application was ever certified. The Development Review Act provides that "[i]n the event the certification of the application is not made within the time specified in this chapter for the type of plan, the application is deemed complete for purposes of commencing the review period" unless the administrative officer has notified the applicant, in writing, of deficiencies in the application. Section 45-23-36(b). Here, there is no evidence that the administrative officer notified the appellant of any deficiencies in its applications; more, there is no evidence that the application was ever certified complete or incomplete. Therefore, the Court concludes that the application was deemed to have been complete as of sixty days after the application was submitted to an administrative officer. Id. The appellant claims and the appellee does not dispute that the appellant submitted its application in July of 2002; thus the very latest it could have been deemed complete was September 30, 2002.
From that date the Planning Board had 120 days (until January 28, 2003) or "a further amount of time that may be consented to by the applicant," to approve the master plan as submitted, approve it with changes and/or conditions, or deny it. Section 45-23-40(e). The Planning Board did none of these things. Instead, based on a memorandum from the Woonsocket City Solicitor, the Planning Board voted to table the application indefinitely. The appellant argues that tabling of its application by the Planning Board did not satisfy the requirement set forth at § 45-23-40(e) that it act within 120 days to either approve or deny RK's application. The failure to take appropriate action, RK asserts, "constitute[d] approval of the master plan;" although the appellant never requested that the approval issue. Section 45-23-40(f). The appellees argue that after the application was tabled, RK should have either sought the variances the Planning Board believed it required, appealed the decision to table the application to the Zoning Board, or waited forty five days and sued for declaratory relief in the Superior Court. Instead, the appellees argue, RK did nothing but apply for reconsideration of the decision, and thereby implicitly consented to a longer period for decision, and knowingly and voluntarily waived the time limits provided by statute.
The Rhode Island Supreme Court has held that "a party or parties for whose benefit a right is provided by constitution, by statute, or by principles of common law may waive such right, regardless of the plain and unambiguous terms by which such right is expressed." Gallucci v.Brindamour, 477 A.2d 617, 618 (R.I. 1984) (noting some of the many rights which have been held waivable, including the right to remain silent and private contractual rights). This Court concludes that the strict time limitations imposed on Planning Board action are for the benefit of individuals applying for Planning Board approval and intended to protect them from "the caprice and arbitrariness associated with protracted and unjustified delays by the government." Bickel v. City of Piedmont,946 P.2d 427, 431 (Cal. 1997). The right to have an application deemed approved may therefore be waived. See id. (holding that time limits on a planning commission's actions were waivable as they primarily benefited applicants).
However, the Court need not determine whether the appellant waived its rights under § 45-23-40(f) because by failing to raise the argument earlier, the appellant is precluded from raising the issue for the first time in this Court. "All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them; and when that procedure is not unreasonable or arbitrary there are no constitutional limitations relieving them from conforming to it."Texaco, Inc. v. Short, 454 U.S. 516, 532 (1981) (citing North LaramieLand Co. v. Hoffman, 268 U.S. 276, 283 (1925)). The appellant, charged with knowledge of his rights under the Development Review Act, failed to request the issuance of an approval after the 120 days had passed, affirmatively requested reconsideration of the Planning Board's decision to table the application, and after the Planning Board had denied its application, appealed its decision to the Zoning Board. RK had ample time during the pendency of these proceedings to raise the issue and assert its rights. "Having thus failed to raise such issue at the administrative level in a timely fashion, plaintiffs may not now, upon judicial review . . . complain of [this matter] for the first time."[1]Citywide Education Action Project v. The Community Svcs. Admin. of theUnited States, 497 F.Supp. 1239, 1250 (S.D.N.Y. 1980) (citing UnitedStates v. L.A. Tucker Truck Lines, 344 U.S. 33, 36-37 (1952) ("orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts").
Next, the appellant argues that the Planning Board and Zoning acted in violation of statutory and planning board provisions, and that their respective decisions are in excess of their statutory authority and evidence a clear error of law because the proposed subdivision does not contravene the requirements of the Development Review Act.
Chapter 2.3 of the Regulations, pursuant to § 45-23-60 of the Rhode Island General Laws, requires that bodies reviewing subdivision applications consider certain factors. The approving authorities must
 "make positive findings on the following standard provisions, as part of the proposed project's record prior to approval:
 a) All local regulations shall require that for all administrative, minor, and major development applications the approving authorities responsible for land development and subdivision review and approval shall address each of the general purposes stated in § 45-23-30 and make positive findings on the following standard provisions, as part of the proposed project's record prior to approval:
 (1) The proposed development is consistent with the comprehensive community plan and/or has satisfactorily addressed the issues where there may be inconsistencies;
 (2) The proposed development is in compliance with the standards and provisions of the municipality's zoning ordinance;
 (3) There will be no significant negative environmental impacts from the proposed development as shown on the final plan, with all required conditions for approval;
 (4) The subdivision, as proposed, will not result in the creation of individual lots with any physical constraints to development that building on those lots according to pertinent regulations and building standards would be impracticable. (See definition of Buildable lot). Lots with physical constraints to development may be created only if identified as permanent open space or permanently reserved for a public purpose on the approved, recorded plans; and
 (5) All proposed land developments and all subdivision lots have adequate and permanent physical access to a public street. Lot frontage on a public street without physical access shall not be considered in compliance with this requirement.
 (b) Except for administrative subdivisions, findings of fact must be supported by legally competent evidence on the record which discloses the nature and character of the observations upon which the fact finders acted."
The Planning Board denied the appellant's application because the subdivision, as proposed, would cause surrounding properties to either become dimensionally nonconforming with regard to the City's Zoning Ordinance or increase their nonconformity, and the appellant had made no attempt to mitigate this. Essentially, the Planning Board found that the proposed development would not be "in compliance with the standards and provisions of the municipality's zoning ordinance." See § 45-23-60(2).
The appellant argues, citing no authority, that the Planning and Zoning Boards should not have considered the effect of the proposed subdivision on surrounding properties. It contends that the subdivision itself was in compliance with zoning requirements, and that should have been sufficient for approval. This Court is not persuaded. The interpretation offered by the appellant — that its subdivision, by rendering neighbors' properties non-conforming, would comply with the zoning ordinance — defies credulity. When interpreting an unambiguous statute, this Court must "determine and effectuate the Legislature's intent and attribute to the enactment the meaning most consistent with its policies or obvious purposes. In doing so, it is firmly established that [the Court] `will not construe a statute to reach an absurd result.'" Jeff Anthony Props. v.Zoning Bd. of Review, 853 A.2d 1226, 1230 (R.I. 2004) (citing KeystoneElevator Co. v. Johnson Wales University, 850 A.2d 912 (R.I. 2004) (quoting State v. Burke, 811 A.2d 1158, 1167 (R.I. 2002))). The Court concludes that the Development Act should not be interpreted in a manner that results in development that is inconsistent with the City's zoning ordinance and comprehensive plan. The Planning Board acted within its authority, consistent with the Development Review Act, and its decision was not affected by a clear error of law. The Zoning Board, too, was well within its authority pursuant to § 45-23-70(a), to affirm the decision of the Planning Board.
Next, the appellant argues that the Planning Board and Zoning Board penalized it for the preexisting dimensional nonconformity of Lot 13 and that such claimed penalization was reversible error. RK argues that the abutting landowner should be held responsible for his noncompliance, and that, the owners of Lot 16, whose home presently meets minimum setback requirements, should be held responsible for knowing that the right-of-way could one day be used as a road and their lots converted into corner lots.
This argument is without merit. This Court has no authority to reverse a decision of the Planning Board or the Zoning Board because it is "unfair" in the estimation of the applicant. See § 45-23-71(c). The abutting owners must have sought and received building permits, the grants of which are now unassailable, final administrative actions; they were never parties to this proceeding, and truly are innocent bystanders in this controversy. Furthermore, the Planning Board and Zoning Board have no authority to hold abutting property owners responsible for noncompliance that would result from the appellant's proposed development.
The appellant further argues that the Boards' denial of RK's application should be reversed because the Planning Board and Zoning Board conditioned approval of the subdivision on RK obtaining variances for Lots 13 and 16. The appellant asserts that this condition is evident from the language of Joseph Carroll's September 11, 2002 memorandum. The Court is unconvinced that any "condition" was imposed. The Planning Board merely informed the appellant that there was a problem with its application so that RK might remedy it; the appellant was free to take any measures it felt efficacious or appropriate. The Court finds the argument to be without merit.
Finally, RK argues that there should have been no discussion during the hearing before the Zoning Board regarding the possibility of RK purchasing the abutting land in order to resolve the existing and potential nonconformities.[2] A review of the record reveals that the Zoning Board simply inquired into the alternatives available to the appellant. The Board did not, as the appellant charges, require conveyance of a property as a condition of subdivision approval. Compare Sako v.Desesto, 688 A.2d 1296, 1297 (R.I. 1997) (noting that such a requirement is in excess of a board's authority). The Zoning Board did not exceed its authority in this instance.
 CONCLUSION
After review of the entire record, the Court concludes that the decision of the Planning Board is not in contravention of relevant statutes, ordinances, and regulations, did not exceed its authority, and that the appellant was precluded from asserting certain rights for the first time on appeal. Substantial rights of the parties were not prejudiced by the decision. The appellant's appeal is denied and the decision of the Zoning Board to uphold the Planning Board's denial is affirmed. The parties shall submit an appropriate order for entry.
[1] The appellant's action in seeking a reconsideration of the Planning Board's decision to table the application was wholly inconsistent with this new argument that its application had in the meantime been approved. It is analogous to a situation where an applicant "precludes himself" from challenging the validity of a statute or ordinance after following its terms, thus admitting its validity. See Sweck v. ZoningBd. of Review of N. Kingstown, 77 R.I. 8, 11, 72 A.2d 679, 680 (1950).
[2] The appellants cite Sako v. Delsesto, 688 A.2d 1296, 1297 (R.I. 1997) to support the proposition that a local zoning board lacks the authority to require conveyance of property as a condition of subdivision approval. While it does support that proposition, such are not the facts of the present case, where the Zoning Board simply inquired into the feasibility of RK purchasing one of the abutting lots.